In the Matter of Baby Boy SHAW, a Minor.

Anthony DeMARINIS, Next Friend for Baby Boy Shaw, Appellant,

v.

Ralph L. SMITH, Juvenile Officer of St. Louis County, Respondent.

No. 33420.

St. Louis Court of Appeals.

Missouri.

Dec. 16, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 14, 1970.

———◆———

Edwards & Schiff, Martin Schiff, Jr., Clayton, for appellant.

Corinne R. Goodman, Clayton, for respondent.

CLEMENS, Commissioner.

At § 211.031 V.A.M.S. the Juvenile Code declares a juvenile court shall have exclusive original jurisdiction in proceedings involving *any child who may be within the county* who is alleged to need care and treatment. The threshold question here: Did the Juvenile Court of St. Louis County err in declining to assume jurisdiction over an abandoned, illegitimate child who resided in a foster home in the City of St. Louis but whose mother resided in St. Louis County?

Baby Boy Shaw was born out of wedlock July 25, 1967. With his mother's informal consent he was transferred from the maternity hospital to a foster home in the City of St. Louis. This transfer was made by representatives of Family and Children's Service of Greater St. Louis (hereafter called the agency). They anticipated that Baby Bow Shaw would soon be adopted. The mother resided in St. Louis County from the time of birth to the time of hearing, but Baby Boy Shaw at all times resided in one of the agency's foster homes in the City of St. Louis and for his care the agency paid $66 a month and furnished clothing and medical services. For a while the mother paid some money to the agency to partly defray the cost of maintenance for the child but she had never seen him since leaving the maternity hospital.

It soon became apparent to the agency that Baby Boy Shaw's physical and mental development was retarded and he might never be adoptable. Thereafter the mother signed documents consenting to termination of parental rights and entering her appearance to termination proceedings under § 211.441 et seq., V.A.M.S. (No such termination proceeding appears to have been instituted.) On October 1, 1968 the Juvenile Court of St. Louis County authorized its Juvenile Officer to file the petition giving rise to this appeal. Apparently this was done at the agency's instance. We say apparently because the agency's representative testified "it was our thinking that this child should be under public auspices * * * because it is long-term care and there is public money for this." The Juvenile Officer's petition, filed in accordance with § 211.091, alleged Baby Boy Shaw "is within the County of St. Louis" and "is without proper care, custody and treatment."

At a hearing held October 8, 1968 testimony supported the above facts, particularly that Baby Shaw was not and had never been in St. Louis County. On October 22, 1968 the Juvenile Court filed a memorandum finding, among other things: Baby Boy Shaw was born out of wedlock; the mother voluntarily surrendered his custody to the agency; he was then placed in a foster home in the City of St. Louis; he continued to reside there and to receive proper support and care from the agency. Further, the Juvenile Court ruled "that said child is not within the jurisdiction of this court." The petition was dismissed.

Thereafter, the Juvenile Court appointed Anthony DeMarinis, the agency's

Executive Director, as next friend for post-trial proceedings on behalf of Baby Boy Shaw and he perfected this appeal. We will refer to the appellant as the agency. Ralph L. Smith, Juvenile Officer of St. Louis County, seeks to uphold the dismissal of his petition and is here considered the respondent.

The agency contends Baby Boy Shaw was "within the county" since that was his mother's residence, and therefore his— that the child was, constructively, within St. Louis County, citing Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W.2d 566 [5, 8], 9 A.L.R.2d 428. This is true in a divorce case where the parents are the litigants, but *Beckmann* is not in point here where the child's status is the primary question before the court. The Juvenile Code is a complete law within itself and jurisdiction over the child is determined by that code. State ex rel. White v. Swink, Judge, 241 Mo.App. 1048, 256 S.W.2d 825 [11].

This constructive presence of the child in St. Louis County, says the agency, was sufficient under the previous juvenile code and the legislature did not intend to restrict the jurisdiction given by the prior law. We do not so read prior juvenile codes.

Missouri's first juvenile code was enacted in 1903; it did not specify territorial jurisdiction as such but authorized a petition to be filed by a person having knowledge or information of *a child within the county* who appeared to be neglected.[1] That clause was dropped in 1909 but the code required the petitioner to be a resident of the county.[2] In 1913 that requirement was retained and it was further declared the act applied to children under 17 *in such counties.*[3] When the juvenile code was extended to class III and IV

counties in 1945 it declared it applied to children *in* such counties and provided for filing complaints concerning any child *in* the county.[4] Our examination of several previous juvenile codes fails to show a single provision extending a juvenile court's jurisdiction to children outside its county.[5]

It is interesting that in 1947 H.B. 122 of the Sixty-fourth General Assembly provided for juvenile court jurisdiction if the child was living within the county or if the child *or* his parents were found within the county. This would have extended territorial jurisdiction to children only constructively present in the county, but the bill failed to pass. We conclude that the previous statutory provisions did not extend a juvenile court's territorial jurisdiction to children only constructively present in the county by virtue of parental residence. Thus the present Juvenile Code does not, as the agency contends, restrict jurisdiction given by previous juvenile codes.

To expand a juvenile court's jurisdiction to include children outside the court's territorial boundaries would contravene a general principle of jurisprudence. State ex rel. Minihan v. Aronson, Judge, 350 Mo. 309, 165 S.W.2d 404 [9], declared: "It is also generally true that a court's jurisdiction 'in personam is confined to persons within the territorial jurisdiction of the court' * * *." This is elementary. State ex rel. Gardner v. Hall, Judge, 282 Mo. 425, 221 S.W. 708 [13]. Applied to Baby Boy Shaw, this principle means his presence outside the territorial jurisdiction of the Juvenile Court of St. Louis County precludes that court from adjudicating his status.

1. Laws of 1903, p. 213 et seq., § 5.

2. Laws of 1909, p. 423; R.S.Mo., 1909, § 4100.

3. Laws of 1913, p. 148.

4. Laws of 1945, pp. 627 and 629; §§ 211.-310 and 211.360.

5. R.S.Mo.1909, § 4098, et seq.; R.S.Mo. 1919, § 2591 et seq.; R.S.Mo.1929, § 14136 et seq.; R.S.Mo.1939, § 9673 et seq.; R.S.Mo.1949, § 211.030 et seq.

As said, the agency contends for jurisdiction since the child's legal domicile was with his mother and that he was constructively within St. Louis County; that the statutory words "any child who may be within the county" are satisfied by this constructive presence. As precedent the agency relies on two cases ruling the question of a juvenile court's territorial jurisdiction. We must bear in mind that both cases were decided before the words "exclusive original jurisdiction * * * involving any child who may be within the county" was made a part of the existing Juvenile Code.

State ex rel. Emory v. Porterfield, Judge, 211 Mo.App. 499, 244 S.W. 966, a prohibition case, was decided in 1922 when the juvenile code's only specific jurisdictional requirement was that the petitioner be a resident of the county in which the action was brought.[6] In *Porterfield* the children lived with their divorced father in Clay County. The mother, a resident of Jackson County, filed a "neglect petition" in the Juvenile Court of Jackson County. In granting prohibition against that court the appellate court ruled that since the children were with their father in Clay County they were not within the respondent's jurisdiction in Jackson County. In its rationale the appellate court said "under [the Juvenile Code] and the general principles of law the juvenile court of one county has no jurisdiction over children before it who are not residents of, and are not in, the county of the juvenile court's jurisdiction." The agency seizes on the word "residents", suggesting that *Porterfield* ruled jurisdiction may rest on either residence or physical presence. We cannot agree. At most, *Porterfield* ruled in the case before it, where there was both residence and physical presence in Clay County, the Juvenile Court of Jackson County had no jurisdiction.

We note the cited basis in *Porterfield*. It relied on the prohibition case of State ex rel. v. Buckner, Judge, 291 Mo. 320, 234 S.W. 651 [2, 4], where the respondent judge of the Jackson County Circuit Court was prohibited from proceeding on a writ of habeas corpus to produce a prisoner held in custody in Lafayette County. The court said: "The Constitution and statutes have created judicatories for the state in such manner as to avoid conflict of jurisdiction and thereby extend to the citizens of each community the privilege and opportunity of resorting to his judicatory without danger of interference from outside tribunals. It was the plan that each court of co-ordinate power and equal rank should function independently of another of the same power and rank. * * * The Constitution has provided judicatories to which citizens may resort in all cases of wrong and injustice, but to avoid conflict of jurisdiction the Legislature, as it had a right to do, has fixed the territorial jurisdiction within which the functions of a circuit judge may be exercised. * * * The rule is well settled that the inherent, as well as the express, powers of the court must be exercised within the territorial jurisdiction of that court unless positive law enlarges the fields of their use. * * *"

Here the agency concedes the Juvenile Court of the *City* of St. Louis would have had jurisdiction over Baby Boy Shaw since he was physically present there. Thus the agency is impliedly contending both courts had jurisdiction. That cuts across the grain of *Buckner* and the holding in *Porterfield* that by "general principle(s) of law" one juvenile court has no jurisdiction over children who are within the jurisdiction of another.

The other case relied on by the agency is State v. Farrell, Mo.App., 237 S.W.2d 492 [3, 4]. There the Ray County Juvenile Court had before it a petition concerning a child physically present in a foster home in that county. The child's mother, a resident of Dallas County, challenged the

6. R.S.Mo.1919, § 2593.

Ray County Juvenile Court's jurisdiction since the child was not a resident of Ray County. In denying this the court ruled: "If a child is neither resident of, nor found in, a given county, there is no jurisdiction vested in such county; but the statute, Section 9698, does not limit jurisdiction to the county wherein a child's parents or guardian may reside, but authorizes the agents of the State to act wherever such a child may be. State ex rel. Emory v. Porterfield, 211 Mo.App. 499, 244 S.W. 966, 967."

As in *Porterfield*, the word "resident" seems unnecessary to the ruling. *Farrell* ruled that where a child was physically present in Ray County the Juvenile Court of that county did have jurisdiction even though its mother's residence was elsewhere. In essence both *Porterfield* and *Farrell* ruled that a child's physical presence determined territorial jurisdiction, and the principle declared in *Buckner* precludes dual jurisdiction.

This territorial limitation on jurisdiction is realistic. The Juvenile Code's purpose, stated at § 211.021 V.A.M.S., is to facilitate the care and protection of children neglected by their parents. Logically this can best be done by the juvenile court of the county where the child is located. But by the agency's interpretation the Juvenile Court of Atchison County, where a mother resided, could adjudicate the status of her abandoned child who was physically present in a foster home 500 miles away in Pemiscot County. Such a legislative intent cannot be read into the words giving jurisdiction over "any child who may be within the county." Had the legislature wanted to widen the jurisdiction of juvenile courts to afford care and protection to children present in another county, say another county where a child's parents resided, it would have been simple to say so. The legislature has not done so in 56 years since the first juvenile code was enacted; when H.B. 122 gave it that opportunity in 1947, the legislature declined.

In view of the cited cases, and the clear words of the present statute "any child who may be within the county", we conclude that since Baby Boy Shaw was not physically present in St. Louis County the Juvenile Court did not err in finding no jurisdiction and dismissing the petition.

■ The agency further seeks to avoid the effect of the child's being outside St. Louis County by contending "that is at best a procedural matter going to venue" and has been "waived by all parties who otherwise contest the same." We need not mark out the fine line sometimes running between the concepts of jurisdiction and venue. Enough that no waiver appears here. The mother did nothing, even if she could, to waive venue. And we reject the agency's contention that the Juvenile Officer waived venue by filing the petition in St. Louis County in the erroneous belief that Baby Boy Shaw was in that county. Even a guardian ad litem cannot waive jurisdiction over his ward's person. Tracy v. Martin, 363 Mo. 108, 249 S.W.2d 321 [1]; Scott v. Royston, 223 Mo. 568, 123 S.W. 454, l. c. 466.

In summary, we find Baby Boy Shaw was not physically present within the territorial jurisdiction of the Juvenile Court of St. Louis County and hence was not subject to its statutory powers. The petition was properly dismissed.

■ As said, the Juvenile Court passed on the merits and found Baby Boy Shaw was not without proper care, custody and control. Since the court ruled it had no jurisdiction any other finding was a nullity. The dismissal, being for want of jurisdiction, was without prejudice to the merits. Civil Rule 67.03, V.A.M.R.

Judgment of dismissal affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment of dismissal is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.