484 S.W.2d 21 (1972)
In the Matter of F____ C____, a minor by his father.
No. KCD 26197.
Missouri Court of Appeals, Kansas City District.
August 2, 1972.
*22 T. E. Lauer, National Juvenile Law Center, St. Louis, for petitioner.
Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.
SHANGLER, Chief Judge.
In this original proceeding in habeas corpus the juvenile petitioner seeks to be discharged from the custody of the Superintendent of the State Training School for Boys under a commitment given by the Juvenile Division of the Circuit Court of Pulaski County.
The issue raised is as to the jurisdiction of a juvenile court to proceed upon a petition filed by its juvenile officer who at the same time occupies the office of prosecuting attorney of the county. The jurisdictional defect asserted is that the two offices are in conflict and incompatible with the provisions and purposes of the Juvenile Act so that a petition filed by the juvenile officer, while occupying the office of prosecuting attorney, is unauthorized and without legal effect, and the judgment entered upon it is void.
The pleadings were accompanied by a stipulation of the parties from which we extract these determinative facts: On December 20, 1971, the petitioner and two other juveniles were taken into custody, and then released, by a highway patrolman who observed two of them shooting out Christmas decorations strung on utility poles along Highway 17 in Waynesville. A written police report describing these incidents was given to Charles M. Wesley, Juvenile Officer and Prosecuting Attorney of Pulaski County. Mr. Wesley assumed the office of Prosecuting Attorney of Pulaski County on January 1, 1967 and has since occupied and served in that office continuously. Mr. Wesley was appointed Juvenile Officer by the Juvenile Division of the Circuit Court of Pulaski County on January 3, 1967 and has since occupied and served in that office continuously. On December 23, 1971, Mr. Wesley, as Juvenile Officer, wrote the petitioner's father requesting his presence, and that of his son, on a specified date. As the result of that conference, the juvenile was informed that "he would be on probation" for six months and would be expected to attend school regularly and observe a 9 o'clock, p. m. curfew. In this, Mr. Wesley was acting on his own initiative as Juvenile Officer and had not brought the matter to the attention of the Court.
Then, on about March 9, 1972, upon his information that the juvenile had been involved in "school bus incidents", Mr. Wesley, as Juvenile Officer, summoned the petitioner and his father to his office once again. Then, on March 12, 1972, as Juvenile Officer, Mr. Wesley again requested that the juvenile and his father return to his office because he had been informed *23 that the juvenile had been involved in a burglary at the Waynesville High School. Father and son complied with each such request. On March 20, 1972, a petition in the interest of the juvenile petitioner, signed by Mr. Wesley as Juvenile Officer, was filed in the Juvenile Division of the Circuit Court of Pulaski County. A hearing was held on the petition on April 19, 1972 at which the Juvenile was represented by counsel privately employed. The court determined that the juvenile was a proper subject for the exercise of its jurisdiction under the Juvenile Act on the basis of these findings:
"Said child has heretofore violated penal statutes of the State of Missouri or ordiances (sic) of the City of Waynesville, Missouri, on (sic) that he did become disrupted (sic) of orderly school procedures, that he is disorderly and on occasions uses vile words in presence of other school children on school bus, participated in assault on school girls who were passengers of the school bus operated by his father, that juvenile was in possession of an air pistol, apparently stolen from Western Auto Store, in Waynesville, Missouri, and was using their air pistol to shoot out Christmas decorations electric light bulbs, and that Juvenile has been counseled by the Juvenile Officer and given Verbal rules of conduct to follows (sic) by the Juvenile Officer, which Juvenile would not follow, including a curfew dead line."
The juvenile petitioner was thereupon committed to the custody of the respondent Superintendent of the State Training School for Boys.
The order of commitment which was attached to, and is thus a part of, the respondent's Return to Writ of Habeas Corpus reflects the appearances at the April 19, 1972 adjudication of the petition in these terms: "Comes now the juvenile officer of this circuit in person and by Charles M. Wesley, Prosecuting Attorney of Pulaski County, Missouri, and comes also F... C..., the child in whose interest the petition has been filed herein, in proper person and by Dale H. Close and Craig E. Miller, his attorneys chosen by the parents of said child (and) W.K.C. parent and natural guardian(s) of said child".
The request of petitioner's counsel that the notice of appeal from the court's judgment serve as a supersedeas in the manner provided by section 211.261, V.A.M.S., was denied by the court. Actually, however, the juvenile has neither appealed in the normal course, nor has he made application to this court under Civil Rule 81.07, V.A.M.R. an alternative still not foreclosed to him to file an appeal out of time.
The writ of habeas corpus is not available to correct trial error, but reaches jurisdictional error only. Label v. Sullivan, 350 Mo. 286, 165 S.W.2d 639, 641 [4]; 39 Am.Jur.2d, Habeas Corpus, sec. 28. The writ takes cognizance of only those defects, patent on the face of the record, in the proceedings and judgment under which the petitioner is held. The writ constitutes a collateral attack on the judgment or order and is not a writ of review. Griggs v. Venerable Sister Mary Help of Christians, Mo.App., 238 S.W.2d 8, 13 [3-5]; 39 C. J.S. Habeas Corpus § 13, p. 443. The Habeas Corpus Act denies its remedy to a petitioner who can be "otherwise relieved". Sec. 532.010, V.A.M.S. Thus, the writ is not a substitute for an appeal, and will not issue where the remedy by appeal is available and is plainly adequate. Hamilton v. Henderson, 232 Mo.App. 1234, 117 S.W.2d 379, 383 [15, 16]. An exception inheres in this rule: where the remedy by appeal is not speedy or adequate to preserve a fundamental right of a petitioner held under a judgment of a court without jurisdiction, habeas corpus is a proper remedy to challenge the detention notwithstanding the petitioner has failed to appeal. In re Solis, 274 Cal.App.2d 344, 78 Cal.Rptr. 919, 921 [1-4]; Fulwood v. Stone, 129 U.S.App.D. C. 314, 394 F.2d 939 (1967); Ex parte Thamm, 10 Mo.App. 595; 39 C.J.S. Habeas Corpus § 15.
*24 We believe the petitioner has no adequate remedy except by this proceeding. The denial of supersedeas by the juvenile court virtually assures that the petitioner will have completed most, if not all, of his detention under the court's order of commitment before his appeal can be determined by an appellate court in the normal course of its business.[1] In circumstances when an appeal would be without efficacy to afford petitioner relief in time to avoid serving his detention, habeas corpus is a proper alternative remedy. In re Newbern, 53 Cal.2d 786, 3 Cal.Rptr. 364, 367, 350 P. 2d 116, 119 [1]; Ex parte Cavitt, 170 Wash. 84, 15 P.2d 276, 277 [2].
Issues other than as to the juvenile court's jurisdiction have been tendered by the pleadings, which, although ordinarily cognizable in appellate review, are not for decision in this proceeding. Consequently our consideration will be confined to the jurisdictional contention that the juvenile court could not proceed upon a petition filed by a juvenile officer who then occupied the incompatible public office of prosecuting attorney. The petitioner asserts, on two distinctly cognizable principles of law, that the effect of the incompatibility of offices was to deprive the juvenile court of jurisdiction to proceed on the petition and to enter the judgment under which petitioner is held: First, the rule of the common law that a public officer cannot hold two incompatible offices at the same time; and, Second, that a juvenile process which permits the same person to exercise the conflicting offices of prosecuting attorney and juvenile officer violates the intent and purpose of the Juvenile Act and denies due process of law.
"The rule at common law is well settled that where one, while occupying a public office, accepts another, which is incompatible with it, the first will ipso facto terminate without judicial proceeding or any other act of the incumbent. The acceptance of the second office operates as a resignation of the first . . . This rule it is said, is founded upon the plainest principles of public policy, and has obtained from very earliest times . . . (T)he law presumes the officer did not intend to commit the unlawful act of holding both offices, and a surrender of the first is implied." State ex rel. Walker v. Bus, Mo. banc, 135 Mo. 325, 36 S.W. 636, 637 [1]; State ex rel. Owens v. Draper, 45 Mo. 355. This rule still obtains and "has never been questioned". State ex rel. McGaughey v. Grayston, Mo. banc, 349 Mo. 700, 163 S.W.2d 335, 339 [10]. If we assume, only for the purposes of discussion, that the offices of prosecuting attorney and juvenile officer are public offices within the definition given in State ex rel. Walker v. Bus, supra, 36 S.W. l. c. 637 and as later modified by the Supreme Court en banc,[2] and are inconsistent in function, the surrender of the first office which is implied in the common law rule does not invalidate the acts of the occupant of the first office so far as third persons and the public are concerned, but that occupant becomes a de facto officer until ousted by proper process.[3] State v. Boiselle, 83 N.H. 339, 143 A. *25 704, 706 [6]; Thomas Sheehan's Case, 122 Mass. 445, 466, 23 Am.Rep. 374; State v. Mayor, etc. of Jersey City, 63 N.J.L. 634, 44 A. 709, 710 [1]; Alleger v. School Dist. No. 16, Newton County, Mo.App., 142 S. W.2d 660, 663 [2].
Thus even if validly applicable, the common law principle of incompatibility of offices does not vitiate judicial jurisdiction to proceed on a petition filed by a de facto juvenile officer acting under the color of section 211.081, V.A.M.S.
However, we find merit in petitioner's alternative submission that the simultaneous exercise of the conflicting offices of prosecuting attorney and juvenile officer is repugnant to the intent and purpose of the Juvenile Act and established concepts of due process. Our decision here will rest upon that premise. The Juvenile Act is rooted in the concept of parens patriae, that the state will supplant the natural parents when they fail in that role. The dominant purpose is clearly stated in section 211.011, V.A.M.S. and carries through the entire Act. It is a purpose which has been reaffirmed perennially by our courts, most recently by the Supreme Court in State v. Arbeiter, Mo., 449 S.W.2d 627, 633 [2]. The juvenile officer, at least up to the adjudicatory phase of the proceeding, is the primal instrument of that purpose. He is charged by section 211.041 to investigate and bring together such information about the child as the court may require. This preliminary exploration, as in this case, generally involves a meeting of the child and parent with the juvenile officer in an informal setting. The juvenile officer is seen there not as an adversary but in an attitude of helpfulness. He elicits the child's cooperation freely, and generally the child responds freely, often to the extent of admitting the conduct which brought him into the juvenile process to begin with. The juvenile officer seeks the information only so the court may secure for the juvenile "such care, guidance and control. . . as will conduce to the child's welfare and the best interests of the state". Section 211.011, V.A.M.S. It is also on this information that the court determines whether a legal basis exists for formal intervention by petition or whether the problem is better resolved otherwise. Thus, the procedures and purposes of the Juvenile Act contemplate a relationship of trust and confidence between the child and juvenile officer as the first indispensible step to rehabilitation.
It is the duty of a prosecuting attorney, on the other hand, to "commence and prosecute all civil and criminal actions in his county in which the county or state is concerned. . . .". sec. 56.060, V.A.M.S. We agree with the petitioner that the functions of a juvenile officer and a prosecuting attorney are so inherently conflicting that the proper administration of the Juvenile Act does not allow these functions to be exercised by a person holding both offices. The reason, as simple as it is fundamental, was recognized in State v. Arbeiter, Mo. banc, 449 S.W.2d 627, which we quote in paraphrase:
"`The parens patriae relationship does not exist between (prosecutor)[4] and child but between court and child. (Prosecutors)[5] are in the business of (prosecuting)[6] transgressions against the welfare of society and the (conviction)[7] of those responsible therefor. They are not engaged in the rehabilitation of the child and the treatment of his emotional and family problems where the free exchange of information and a close relationship is so important.'"
The respondent concedes that it would be an incompatible exercise of authority for a prosecuting attorney who served as juvenile officer in the proceedings below to prosecute a child after jurisdiction over him has been relinquished to the general law, *26 but insists that the offices are not per se incompatible. He concludes: "Charley Wesley did not exercise any of his Prosecuting Attorney powers during the proceedings", and therefore no basis for relief by habeas corpus appears. The order of commitment which is exhibited in respondent's return to the writ, however, discloses Wesley's appearance and participation in those proceedings not only as juvenile officer, but as prosecuting attorney, eo nomine. Obviously, such a process is not one to inspire trust, and it is understandable that the petitioner questions the good faith of the proceeding by which he is now detained.
The functions of juvenile officer and prosecuting attorney cannot be accomodated in one person without undermining the parens patriae foundation of our juvenile system. For then, in any instance, when a juvenile has been referred to the juvenile court for conduct which violates a criminal statute, fundamental fairness would require that the juvenile be warned at the first encounter that the juvenile officer also may have the duty to prosecute him, and is a potential adversary. The result would be to advance to the very earliest stage of the juvenile process the need for constitutional due process, such as advising of the right to counsel and of the privilege against self-incrimination. Cf. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. It would greatly impair pre-judicial adjustments and other voluntary dispositions and greatly impair the rehabilitative function of the juvenile court. "Such a result would naturally be self-defeating since there is little room for the parens patriae relationship to operate within the narrow confines of standards evolved for use in the adversary criminal setting." State v. Arbeiter, 449 S.W.2d l. c. 631.
In adopting the Juvenile Act, "it was the intention of the legislature to take completely away from the prosecuting officers any direct connection with the juvenile proceeding so as to lessen the `stigma' of being involved in such proceeding." State v. Taylor, Mo.App., 323 S.W.2d 534, 537.[8] Section 211.411, subsec. 1 of the Act imposes the duty on prosecuting attorneys "to give the juvenile officer such aid and cooperation as may not be inconsistent with the duties of their offices." That the nature of the "aid and cooperation" contemplated does not extend to serving in the office of juvenile officer itself is made clear by section 211.391, subsec. 4 of the Act which provides: "No prosecuting attorney shall serve as the juvenile officer or deputy juvenile officer in counties of the second class or in those judicial circuits containing a county of the second class."[9] (Pulaski, Maries, Phelps and Texas counties which comprise the 25th Judicial Circuit are all of the third class.) Secs. 211.381, 211.391 and 211.392 were reenacted in 1967 and relate to the compensation of juvenile court personnel in class one counties (and the City of St. Louis), class two counties and circuits composed of second and third class counties, and third and fourth class counties. While no similar or comparable provision prohibiting a prosecuting attorney from serving as a juvenile officer appears in the section relating to first, third or fourth class counties or the City of St. Louis, the purpose and policy which dictated the enactment of the Juvenile Act and of section 211.391 subsec. 4 are so clearly expressive of a general legislative intent to bar prosecuting attorneys from serving in such incompatible functions that such intent should be given full effect. We do not believe the disparity between the sections gives occasion for the interpretive maxim, expressio unius est exclusio alterius. "The maxim may properly be invoked `only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must *27 be intended to have opposite and contrary treatment.'" Springfield City Water Co. v. City of Springfield, 353 Mo. 445, 182 S. W.2d 613, 618 [3]. The context of the full Juvenile Act does not warrant the conclusion that as to counties other than "counties of the second class or in those judicial circuits containing a county of the second class" a prosecuting attorney may serve as juvenile officer. To the contrary, section 211.391, subsec. 4 expresses the parens patriae policy which underlies the Act and extends throughout all its provisions.
For the reasons stated, we hold the juvenile court did not have jurisdiction to commit the petitioner to the State Training School for Boys. Accordingly, it is ordered that the petitioner be discharged forthwith from the custody of the Superintendent of the State Training School for Boys.
All concur.
NOTES
[1] Respondent does not dispute petitioner's assertions that "the average length of stay at the (State Training) School is seven months" and that "the normal process of appeal would consume six or eight months". See, Civil Rules 81.18, 81.19, and 84.05(a).
[2] State ex rel. Pickett v. Truman, Mo. banc, 333 Mo. 1018, 64 S.W.2d 105, 106 [1]; Kirby v. Nolte, Mo. banc, 349 Mo. 1015, 164 S.W.2d 1, 8 [8]; State ex rel. Webb v. Pigg, Mo. banc, 363 Mo. 133, 249 S.W.2d 435, 438 [2]; and compare, Hastings v. Jasper County, 314 Mo. 144, 282 S.W. 700, 701 [1].
[3] Habeas corpus is not the proper method to test the official conduct of a de facto public officer. "(T)itle to a public office or the right of a de facto officer to exercise the rights and duties of the office cannot be tested except by the state in a direct proceeding for that purpose and the authority to institute quo warranto proceedings rests within the discretion of the officers named in Sec. 531.010, RSMo VAMS." Boggess v. Pence, Mo. banc, 321 S.W.2d 667, 671 [1]; Civil Rule 98.01, V.A.M.R.; State v. King, Mo., 379 S.W. 2d 522, 525 [4, 5]; State ex rel. McGaughey v. Grayston, Mo. banc, 349 Mo. 700, 163 S.W.2d 335, 340 [14, 15].
[4] "Police" in the opinion.
[5] "Police" in the opinion.
[6] "Solving" in the opinion.
[7] "Apprehension" in the opinion.
[8] In that opinion the court poses, but reserves, the question here presented.
[9] First included in 1967 re-enactment.