STATE of Missouri ex rel. R. A. P., a minor, by Charles Paxton, his next friend, Relator,

v.

Honorable Charles Lee BARKER, Circuit Judge, 30th Judicial Circuit, Respondent.

No. KCD26499.

Missouri Court of Appeals, Kansas City District.

July 23, 1973.

Hill & McMullin, Kansas City, for relator.

Robert S. Drake, Jr., Pros. Atty., Warsaw, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ.

SHANGLER, Judge.

In these original proceedings the juvenile relator seeks to prohibit respondent Circuit Judge of Benton County from the exercise of a criminal jurisdiction on an information charging relator with murder in the first degree, which prosecution was commenced against relator after determination by the Juvenile Court of Benton County—on a petition alleging against the juvenile the commission of the homicide in Benton County—that relator was not a proper subject to be dealt with under the juvenile law, thus rendering relator amenable to the criminal process. The juvenile relator contends that he was not within Benton County as required by § 211.031, RSMo 1969, at the time the Juvenile Court of that county undertook to exercise jurisdiction over his person, so that such pretended exercises of jurisdiction, including the order relinquishing jurisdiction over the juvenile to general law and the conse-

quent criminal proceedings, are all without warrant of law.

It is conceded that at the time of the alleged homicide relator was resident in Jackson County, Missouri, that he was neither found nor apprehended in Benton County, but that his appearance in the Juvenile Court of Benton County was compelled by his arrest in Jackson County under process issued by the Juvenile Court of Benton County to answer a petition which alleged the homicide against him.

The issue for determination is the jurisdiction of a juvenile court to proceed against a child alleged to have violated a state law within the territory of the county in which the juvenile court is sited but who, at the time of initiation of proceedings against him, is not within that county. If the Juvenile Court of Benton County was without authority to adjudicate relator's juvenile status, its determination that relator was not a proper subject to be dealt with under the juvenile law was without legal effect and the respondent circuit judge was without jurisdiction over the person of relator or the subject matter of the prosecution.

■ The issue is resolved by the plain language of the governing statute, § 211.031, which in relevant part provides:

Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

(1) Involving any child who may be within the county who is alleged to be in need of care and treatment because:

.   .   .   .   .   .

(d) The child is alleged to have violated a state law or municipal ordinance:

This statute which reposes "exclusive original jurisdiction" in the juvenile court of the county where the child "may be" is construed to require the physical presence of the child within the territorial jurisdic-

tion of a juvenile court which undertakes to adjudicate his status.

■ A case which rules precisely the issues presented here, State ex rel. D.A.S., a minor v. Adams, 485 S.W.2d 442 (Mo. App.1972), held that the juvenile court of Montgomery County was without jurisdiction to proceed against a juvenile who was neither resident nor found within that county on a petition which alleged a violation of state law within Montgomery County by the juvenile. The rationale of § 211.031 was construed, l. c. 443 [1, 2]: "[T]he court's jurisdiction is in personam and is confined to its territorial jurisdiction. This may not be enlarged to include . . . constructive presence in the county where a criminal act was committed, as presented here."

It has been the legislative purpose of every juvenile code, since the first enactment in 1903, to ground the authority of a juvenile court to adjudicate on the physical presence of a child within the territorial jurisdiction of the court. "This territorial limitation on jurisdiction is realistic. The Juvenile Code's purpose, stated at § 211.021, V.A.M.S., is to facilitate the care and protection of children. . . . . Logically this can best be done by the juvenile court of the county where the child is located. . . . . Had the legislature wanted to widen the jurisdiction of juvenile courts to afford care and protection to children present in another county . . . . . it would have been simple to say so. The legislature has not done so . . . . . since the first juvenile code was enacted; when [given] that opportunity in 1947, the legislature declined." In Matter of Baby Boy Shaw, a Minor v. Smith, 449 S.W.2d 380, 384 [1, 2] (Mo. App.1969).

The purported exercise of jurisdiction by the Juvenile Court of Benton County over relator, who was not found in that county, was invalid; its order terminating jurisdiction over relator was also without effect;

hence respondent circuit judge is without authority to exercise a criminal jurisdiction over relator who remains amenable to the exclusive jurisdiction of the juvenile law process.

Our preliminary rule in prohibition is made absolute.