In the Interest of M_____ C_____,
a child under seventeen years
of age, Appellant.

No. 35030.

Missouri Court of Appeals,
St. Louis District.

Jan. 3, 1974.

Charles W. Bobinette, Legal Aid Society of St. Louis, Richard J. Habiger, Natl. Juvenile Law Center, St. Louis, for appellant.

John C. Danforth, Atty. Gen. by G. Michael O'Neal, Jefferson City, for respondent.

KELLY, Judge.

This is an appeal from the Juvenile Division of the Circuit Court of the City of St. Louis finding that the 14 year old child came within the provisions of Subdivisions c & d of paragraph 1 of Section 211.031 RSMo.1969, V.A.M.S., by reason of (1) his prior adjudication of April 12, 1972, and (2) that on June 26, 1972, in concert with another, he did steal the property of B. D. of a value of less than $50.00.[1] The appellant attacks (1) the admissibility of a purported incriminating statement, (2) the validity of a court order committing him to the custody of the State Board of Training Schools but suspending said commitment and placing him in the home of his parents under court supervision and (3) the role assumed by the deputy juvenile officer in "booking" appellant and his "failure to provide adequate safeguards for the appellant." For reasons hereinafter set forth, we reverse and remand.

Appellant's first point is that the Commissioner who conducted the adjudicatory hearing erred in admitting into evidence a statement the appellant made to the juvenile officer which was incriminatory in nature. The attack on the admissibility of this statement is threefold: 1) that the Commissioner, in arriving at his ruling on the appellant's motion to suppress said statement, erred in placing the burden of proof on the issue of involuntariness of the appellant; 2) that the Commissioner erred in holding that the evidence presented on the motion to suppress appellant's statement was sufficient to support the Commissioner's ruling that said statement was voluntarily made and admissible in evidence against him; 3) that the juvenile officer failed to meet the burden of proving that under the "totality of the circumstances" appellant's statement was given upon a "voluntary, knowing and intelligent waiver" of appellant's constitutional rights.

A petition pursuant to Sec. 211.091, had been filed by the juvenile officer on July 12, 1972. Endorsed on the petition were the names of certain witnesses, but following a dicussion on the date of the hearing of this case in the morning of August 4, 1972, the names of two police officers, Corporal Fitzgerald and Patrolman O'Connell, both Police Officers of the St. Louis Metropolitan Police Department, were deleted therefrom by the petitioner. At the opening of the hearing Mr. Uthoff, counsel for the appellant, announced that he would like to make an oral motion to suppress any statements made in the case on the grounds that they were involuntarily given without advising the appellant of his constitutional rights. When the Commissioner inquired if he had any testimony to put on in support of his motion he announced that he would like to call as his witnesses Officers O'Connell and Fitzgerald. When the Commissioner inquired if the police officers were there in Court, counsel for the appellant announced that they were not, but that since their names were endorsed on the petition he assumed that they would be and if the Court wished, he would go out and look for them. Court advised Mr. Uthoff that since it was

---

1. All statutory references are to RSMo. 1969, V.A.M.S., unless otherwise stated.

his motion that any witnesses he had in support thereof should be in court and that he was not going to delay the motion and "inconvenience the Court." Without further ado, counsel for the appellant called the appellant to the stand and he testified that he was transported to the Juvenile Building where he signed a statement in the presence of the Deputy Juvenile Officer VanField, Corporal Fitzgerald, Patrolman O'Connell, his parents, and G———— M————————, another juvenile who was implicated in the occurrence for which appellant was brought before the Juvenile Court on this occasion. Appellant denied that the statement he signed was made by him but was something that had been told to him by G———— M————————. Appellant said he· did not read this statement and denied that it was read to him. The explanation for signing the statement was that Corporal Fitzgerald had told him that if he signed the statement he would not be held in detention. He testified that after he signed the statement he was permitted to go home. Appellant was not cross-examined nor did he offer any other witnesses or evidence in support of his motion.

Deputy Juvenile Officer VanField was called as a witness by the Presenting Officer, Mr. Rudolph, and he testified that he was employed by the Juvenile Court of the City of St. Louis as a Deputy Juvenile Officer and as such his duties consisted of processing juveniles as they were "booked," advising them of their rights, and then taking-down their statements. Mr. VanField testified that G———— M———— was questioned first concerning the facts of the occurrence in the presence of G———— M————'s mother, the police officers, appellant and appellant's parents. He further stated that he advised the appellant of his constitutional rights in the presence of the two police officers, G———— M————, the mother of G———— M———— and the appellant's parents, and that after said advice appellant made a statement which VanField then put into typewritten form and presented to appellant's mother who

read it and signed it. He denied making any threats to appellant to obtain this statement and also said that he heard no threats made by the police officers. He also said he made no promises to appellant relative to the making of this statement. After appellant's mother signed the statement she, in turn, handed it to appellant who, according to the Deputy Juvenile Officer, read it to himself and then signed it. On cross-examination by appellant's counsel, Mr. VanField testified that he did not know how long the police officers were with the boy before this statement was made, nor what, if anything, they may have said to him prior to that time. During the evidence on the oral motion to suppress the "Waiver of Attorney and Statement" form were not formally introduced although they were referred to in cross-examination of Mr. VanField by appellant's counsel.

At the conclusion of the evidence on the motion to suppress, the following colloquy took place between the Commissioner and counsel for the appellant.

"THE COURT: It's a question of believing your witness. Your witness, M——C——, said something about some Police Officers giving him promises.

"BY MR. UTHOFF: My interpretation is, you are bound to the evidence before the Court, that has been made. This man does not know what the Police said. They could have said a number of things and for you, to be making a ruling, I think it would be guess work.

"THE COURT: It would be a question of belief, in support of your motion, whether that testimony is worthy of belief and a number of other things.

"BY MR. UTHOFF: I think the burden of proof is on Mr. Rudolph.

"THE COURT: The burden of proof is on you. It's your motion.

"BY MR. UTHOFF: I put on evidence, Your Honor, that this statement was not voluntarily made.

"THE COURT: You took this down? No promises, no threats, by the Officers?

"THE WITNESS: No promises—

."BY MR. UTHOFF: This boy's statement is self-deceiving, (sic) Your Honor, and not collaborated (sic) either. They have not denied their signatures. As far as this—

"THE COURT: Motion to suppress will be denied."

Were this a criminal proceeding following certification of a child by the Juvenile Court for trial as an adult the burden of proving that the child's constitutional rights had been knowingly waived and that the incriminating statement was voluntarily made would rest on the prosecution. State v. Williams, 369 S.W.2d 408, 410 [4] (Mo. banc 1963). In this case we are concerned with the admissibility of an incriminating statement allegedly made by a child 14 years of age while in the custody of a deputy juvenile officer of the Juvenile Court of the City of St. Louis, subsequent to a waiver to his right to counsel, in an adjudicatory hearing to determine whether the child will be found to be "delinquent" and subjected to loss of his liberty for a period of years which conceivably could exceed any punishment legally imposed were he to be prosecuted as an adult. Secs. 560.156 and 560.161 [1]. So far as we have been able to determine this is the first occasion that this question has been presented to an appellate court of this State.

The courts of this State have held that a child 14 years of age is not, as a matter of law, incapable of waiving appointment of counsel and the privilege against self-incrimination. State v. Sinderson, 455 S.W. 2d 486, 494 [6] (Mo.1970).

 Adjudicatory hearings in Juvenile Court are not criminal in nature; the practice and procedure customary in equity proceedings govern all proceedings therein and the procedure to be followed at said hearings shall be determined by the Juvenile Judge and may be as formal or informal as he considers desirable. Sec. 211.-171. In an equity proceeding the moving party has the burden of proof to support his motion with evidence. 56 Am.Jur.2d, Motions, Rules, and Orders, § 24, p. 20; 60 C.J.S. Motions and Orders § 37 [5]a, p. 48. However, the Supreme Court of the United States has held that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). The Supreme Court recognized that special problems may arise with respect to waiver of the privilege by or in behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of the parents. The specific question facing the Court in Gault was: "whether, in such a proceeding (one in which a determination of delinquency which might result in commitment to a state institution), an admission by the juvenile may be used against him in the absence of clear and unequivocal evidence that the admission was made with knowledge that he was not obliged to speak and *would not be penalized for remaining silent.*" (Emphasis supplied). 387 U.S., 1. c. 44, 87 S.Ct., 1. c. 1452. In deciding this question the Court, 387 U.S., 1. c. 49, 87 S.Ct., 1. c. 1455 said:

". . . It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person 'shall be compelled in any *criminal case* to be a witness against himself.' However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory.

"It would be entirely unrealistic to carve out of the Fifth Amendment all statements by juveniles on the ground that these cannot lead to 'criminal' involvement. In the first place, juvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings."

The Supreme Court concluded that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults, and although recognizing that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there might be some differences in technique, but not in principle, depending upon the age of the child and the presence and competence of parents, stated, 387 U.S., 1 c. 55, 87 S.Ct., 1. c. 1458: "If counsel was not present for some permissible reason when an admission was obtained, *the greatest care* must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." (Emphasis supplied).

▆ We hold that the Commissioner erred in placing the burden of proving that the incriminating statement which the petitioner sought to introduce into evidence was involuntary. The decision of the Supreme Court of the United States in Gault, supra, compels us to hold that when the admissibility of an alleged confession, admission or incriminating statement allegedly made by a child is attacked during an adjudicatory hearing to determine whether the child will be found to be "delinquent" and subjected to commitment in a State institution on the grounds that it was not voluntarily made, the burden of proof in

that respect rests on the petitioner who seeks its introduction to produce sufficient evidence to make a prima facie case, 1) that at all stages of the interrogation the child was informed of his constitutional rights and understood them, and 2) that no physical force or coercion, promises, threats or other unlawful means or inducement were employed in obtaining the confession, admission or incriminating statement. This standard, in our opinion, would not be too onerous in a proceeding in Juvenile Court.

Appellant's next contention is that the Commissioner failed to make a specific finding as to voluntariness of the appellant's statement, as required in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1966). While the Commissioner held a specific hearing on the voluntariness issue he applied the wrong gauge as we have hereinabove ruled and therefore any ultimate finding appearing in the record would be based upon an erroneous standard. Since this case is to be remanded and retried with application of correct standards the basis for this contention should not appear in the new hearing.

Appellant's contention that there was insufficient evidence to support the Commissioner's ruling on the issue of voluntariness of the statement is based upon the failure of the presenting officer to adduce any evidence to contradict appellant's testimony that Corporal Fitzgerald had induced him to sign the statement by assuring him that if he did he would not be kept in detention but would be permitted to go home with his mother. Appellant was not cross-examined on this point nor was any evidence offered to contradict him at any time during the course of the trial with respect to this testimony. We recognize the right of the trial court as the trier of facts to believe or disbelieve all or any part of a witness' testimony, Walster v. State, 438 S.W.2d 1, 2 [1] (Mo.1969), and would normally defer to his judgment in this respect. However, since this case is to be retried we would expect that this question would

be resolved on the new adjudicatory hearing and for that reason need not decide this point in the posture presented.

█ Appellant's Point II is that the order of August 4, 1972, committing appellant to the State Board of Training Schools, suspending the execution of the Commitment, and placing him in the custody of his mother under court supervision is void and unauthorized by the provisions of Secs. 211.181 and 211.231. We agree with the conclusion reached by the Kansas City District of this Court. This same point has been raised and correctly ruled In the Matter of A—— N——, 500 S.W.2d 284 (Mo.App.1973), where an order of this nature was held to be beyond the statutory powers of the juvenile court and the commitment part of the order was held to be mere surplusage and a nullity, which did not, however, destroy or vitiate the placement part of the order, which was a legal and valid disposition of the matter. However, since this case is to be reversed and remanded on other grounds, the order will be set aside and the cause remanded.

█ Appellant's final Point is that the Deputy Juvenile Officer was not acting within the authority conferred upon Juvenile Officers when he processed the appellant and took his statement. He argues that in "booking" the appellant and taking a statement from him the Deputy Juvenile Officer was acting as a prosecutor or police officer and by using his position as an officer of the Juvenile Court he lulled the appellant into a false sense of security and disarmed him so that he unwittingly signed a paper waiving his constitutional rights and also signed an incriminatory statement. He further contends that the use of the term "booking," which is derived from the "adult criminal justice system" is inappropriate in the "civil, non-punitive, rehabilitative juvenile justice system."

Respondent's position is that the appellant failed to object to the testimony of the Deputy Juvenile Officer that he had "booked" the child, and therefore nothing is preserved for review in this respect. A careful reading of the transcript reveals no objection to this testimony. We rule therefore that respondent's position is well taken, and there is nothing for us to review concerning the semantics of the duties of the Deputy Juvenile Officer in processing the appellant after he was surrendered to the custody of the Juvenile Court.

Our conception of appellant's objection to the taking of the statement is that the Deputy Juvenile Officer in eliciting a statement from the child delivered into his custody by officers of the St. Louis Metropolitan Police Department, pursuant to the provisions of Sec. 211.061 violated his trust when he, together with the two police officers, elicited incriminating statements from the child which were subsequently used against the child in the hearing at which the question of his delinquency was to be adjudicated. The Legislature in amending Sec. 211.271 following the decision in State v. Sinderson, supra, provided in subsection (3) that once a child was taken into custody as provided in Sec. 211.131, *all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel* are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under Chapter 211. The final phrase of this Section dealing with proceedings under Chapter 211 support the conclusion that such statements could be used in a proceeding of this nature, provided the child's constitutional rights were waived.

█ The juvenile officer occupies an unusual position in our system of juvenile justice. When a child is taken into custody he must be "taken immediately and directly before the juvenile court or delivered to the juvenile officer . . ." Sec. 211.061(1). The juvenile court is charged with making a preliminary inquiry to determine the facts and whether the interests of the public or of the child require

that further action be taken. Sec. 211.081. Juvenile officers have imposed upon them by statute the duty to make such investigations and furnish the court with such information and assistance as the judge may require to aid him in making this determination. They are required to keep a written record of these investigations and to submit reports thereon to the judge. They are also authorized to take charge of children before the hearing as the court may direct. Sec. 211.401. It is in the performance of these duties that the juvenile officer meets with the child and parents to explore the factual circumstances which have caused the child to be taken into custody and delivered into his care. This conference, of necessity, is to be promptly held so that a determination may be made whether the child shall be returned to his parents, for if he is to be detained an order of court specifying the reason for detention must be obtained. Sec. 211.141. This meeting is generally held in an informal atmosphere conducive to obtaining cooperation from both parents and child towards the end that the purpose of the code might be achieved, i. e., "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court . . . to the end that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state . . ." The juvenile officer is not a prosecutor and if he functions as such he is striking at the very foundations of the juvenile justice system. In re F——— C———, 484 S.W.2d 21, 26 [11] (Mo.App.1972).

 We, nevertheless, hold that it is consistent with the statutory duties imposed by the Legislature of this state on juvenile officers as set out hereinabove, that a child coming within the exclusive original jurisdiction of the juvenile court, Sec. 211.031, be subject to interview or interrogation by a juvenile officer, subject of course to the constitutional protections extended to the child in proceedings in the juvenile court by the Supreme Court of the United States in In re Gault, supra. We further hold that any statements, admissions or confessions so obtained, if the constitutional protections have been observed, are admissible in proceedings under the Juvenile Code, Ch. 211, to determine "delinquency" which may lead to commitment to a state institution.

Reversed and remanded for further proceedings not inconsistent with the views expressed in this opinion.

SIMEONE and WEIER, JJ., concur.