In the Interest of C. W., Jr., a child under 17 years of age, by his next friend, Donna J. Johnson, Plaintiff-Appellant,

v.

William J. MURPHY, Juvenile Officer of the Juvenile Court of the City of St. Louis, Defendant-Respondent.

No. 35206.

Missouri Court of Appeals, St. Louis District, Division Two.

April 9, 1974.

Charles W. Bobinette, Legal Aid Society, National Juvenile Law Center, St. Louis University of Law, St. Louis, for plaintiff-appellant.

---

2. However, see MAI–CR 2.40 for the appropriate instruction subsequent to January 1, 1974.

Robert M. Kaiser, David B. Agnew, St. Louis, for defendant-respondent.

GUNN, Judge.

C. W. Jr., a twelve-year old boy, by next friend appeals a judgment of the Juvenile Division of the St. Louis Circuit Court committing him to the Missouri Division of Mental Health for institutional placement. Jurisdictional issues and questions regarding procedures in obtaining waivers of rights and statements of a juvenile are involved.

On October 28, 1972, the body of Bernice Gee was found in her St. Louis apartment. She had been fatally stabbed with a knife and her apartment had been burglarized and set afire. In their investigation of the crime, the St. Louis police found that C. W., Jr. and his ten year old brother had been in Bernice Gee's apartment building on the day of the crime visiting their grandfather, who also lived in the apartment building. The St. Louis police questioned C. W., Jr. and his brother at the grandfather's apartment about details of the crime and even checked C. W., Jr.'s hair to determine if there were paint particles present which would match the paint at Mrs. Gee's apartment. The police had reason to believe that entry to Mrs. Gee's apartment had been gained through a small transom aperture; that only a small person or child could have entered the apartment through the transom. A police record check was made by the St. Louis police with the University City police (C. W., Jr.'s home police department), and it was determined that C. W., Jr. had previously been taken into custody for burglary, assault and arson. On October 31, 1972, St. Louis police went to C. W., Jr.'s St. Louis County home in University City and requested C. W., Jr. and his brother to accompany them to St. Louis police headquarters to be interviewed for the purpose of obtaining information about the crime. The mother and grandfather accompanied them to the St. Louis police station. The St. Louis police said they merely asked the children to go with them. C. W., Jr.'s mother and grandfather indicated that there was no choice other than their going to the St. Louis police station. At that time, C. W., Jr. was a suspect of the crime along with other persons. At the police station, police officers interrogated C. W., Jr. and his brother alone in separate interrogation rooms. When conflicts in the two brothers' stories occurred, the police announced to C. W., Jr.'s mother that the youth could have been involved in the crime and asked whether the mother would consent to a polygraph test for her son and influence him to make a statement. C. W., Jr. then admitted to his mother that he had committed the crime. The police then gave C. W., Jr. his Miranda warning rights, had him sign a waiver of his constitutional rights and took a complete taped statement. Finally, after the statement was completed, the police took C. W., Jr. to the St. Louis Juvenile Court. He was again advised of his constitutional rights by a deputy juvenile officer "in a very careful manner", and a waiver of those rights was signed by C. W., Jr. and another confession obtained.

Later, application was made to the St. Louis Juvenile Court for authority to fingerprint C. W., Jr., as prints found at the scene of the crime indicated they could be those of a juvenile. The request was granted and C. W., Jr.'s prints were taken without counsel present and found to match those taken from Mrs. Gee's apartment.

There are additional facts relating to C. W., Jr's mental capacity. C. W., Jr. is retarded—intellectually handicapped. Although twelve years old, his mental age was that of an eight year old with a 2.2 grade level reading ability. On October 31, 1972, shortly prior to his giving his statement and signing his waiver of rights, C. W., Jr. had taken his prescribed dosage of phenobarbital and dilantin to control his behavior and epileptic seizures caused by brain damage occurring at an early age through lead poisoning. Dr. Eugene Kissling, Chief of the St. Louis Juvenile Court

Diagnostic Treatment Center, tested the emotional and intellectual profile of C. W., Jr. and concluded that he would not have been able to understand the constitutional rights which he waived; that C. W., Jr. would only understand the waiver if explained using relatively concrete terms and requiring C. W., Jr. to express in his own words what he understood the terms to be. C. W., Jr.'s mother testified at the time she observed her son sign the waiver, she was emotionally upset and crying over the nightmare developing.

The juvenile officer of the St. Louis Juvenile Court filed a petition requesting the St. Louis Juvenile Court to exercise jurisdiction over C. W., Jr. Pretrial motions to dismiss the petition on the grounds of lack of jurisdiction and motions to suppress the confession and fingerprint evidence were filed on behalf of C. W., Jr. The motions were denied, and the St. Louis Juvenile Court found C. W., Jr. guilty of murder in the first degree, burglary and arson and ordered him committed to the Missouri Division of Mental Health for appropriate institutional placement. Counsel for C. W., Jr. asserts that the Juvenile Division of the Circuit Court of the City of St. Louis was without jurisdiction; that the confession and the waiver of rights signed by C. W., Jr. are invalid. They further argue that the jurisdiction of the matter lies with the Juvenile Court of St. Louis County, and for that purpose C. W., Jr. and his mother entered into a consent decree with the Juvenile Court of St. Louis County to grant jurisdiction in that court.

We have serious doubt whether C. W., Jr. under the totality of circumstances could or did understand the waiver of his constitutional rights which he signed. See In Re M. C., 504 S.W.2d 641 (Mo.App. 1974) and State v. White, 494 S.W.2d 687 (Mo.App.1973). But we need not reach that issue on our determination of the case.

We hold that under the circumstances of this case the St. Louis Juvenile Court was without jurisdiction; that proper jurisdiction would lie in the St. Louis County Juvenile Court.

In a recent decision of this court, In Re M. W., 504 S.W.2d 189 (Mo.App.1973), we held that "the obligation of [the] police upon taking a juvenile into custody is to take him 'immediately and directly' before the juvenile court which acquires jurisdiction 'from the time the child is taken into custody.'" (1.c. 192) We held in In Re M. W., *supra,* that the jurisdiction vested in the juvenile court of the county where the juvenile was apprehended and at the immediate moment of apprehension.

In In Re M. W., *supra,* the juvenile was charged with participating in a robbery in St. Louis County. St. Louis police apprehended the minor at his home in the City of St. Louis, and he was turned over to a St. Louis County municipal police department which transported him to St. Louis County. We said (1.c. 192):

" * * * [U]nder the Juvenile Code, the place of the commission of an offense has no jurisdictional significance insofar as venue is concerned, as it does in criminal proceedings. (Citing cases.) There is, therefore, no need for transporting a juvenile from the jurisdiction in which he is apprehended into another jurisdiction where his alleged misconduct occurred.

"The purpose of the Juvenile Code is to 'Facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court.' R.S.Mo. 211.011. This purpose does not require that a child be transported from his home county to the county of the crime. It is more probable that 'care, protection and discipline' can be effectuated in the juvenile's home county than in some distant county." (1.c. 192)

See also State ex rel. R. A. P. v. Barker, 497 S.W.2d 838 (Mo.App.1973), that jurisdiction of the juvenile court reposes in the county where the child is found or resides, and the situs of the crime is not controlling.

We also pointed out In In Re M. W. that it was not the function of police officers to determine which juvenile court they wish to have process the child.

In State v. Arbeiter, 408 S.W.2d 26, 30 (Mo.1966), it was held that under Section 211.061 R.S.Mo.1969, V.A.M.S., a police officer taking a child into custody for an offense was required to take him immediately and directly to the juvenile court or juvenile officer acting for him. And in Arbeiter, *supra,* the court in quoting with approval from State v. Shaw, 93 Ariz. 40, 378 P.2d 487, said, l.c. 408 S.W.2d 30:

"The need for special treatment begins at the instant the juvenile is contacted by [the] peace officers."

The need for special treatment of the juvenile commencing with his first encounter or meeting with police officer was recently affirmed in In Re K. W. B., 500 S.W.2d 275, 283 (Mo.App.1973), and In Re F. C., 484 S.W.2d 21, 26 (Mo.App.1972). Thus, piecing the existing law together and giving the required liberal construction to the Juvenile Code, State v. Arbeiter, *supra,* we find in this case that the St. Louis Juvenile Court was without jurisdiction over C. W., Jr. At the time the police made contact with him at his home in University City, St. Louis County, Missouri, the requirements of Section 211.031 R.S.Mo.1969, V. A.M.S. required him to be taken to the St. Louis County Juvenile Court rather than to a St. Louis City Police interrogation room for questioning until the charges could be "nailed down". The respondent here says that C. W., Jr. was not considered a "prime" suspect but was a suspect no more nor no less than other suspects. We know of no nuances of shades of differences in describing the type of suspect a juvenile should be before the application of the Juvenile Code takes effect. While In Re M. W., *supra,* spoke of taking a juvenile into custody or apprehending the minor, applying the language of State v. Arbeiter, *supra,* In Re K. W. B., *supra,* and In Re F.

C., *supra,* and giving liberal application to the Juvenile Code; the St. Louis police should have at the moment of contact with their suspect, C. W., Jr., at his home in University City advised him and his mother of his constitutional rights and particularly advised him so that under the totality of the circumstances that C. W., Jr. and his mother would know that by removing him from his home and transporting him to the City of St. Louis, the possibility existed that C. W., Jr. would be waiving his statutory right to the jurisdiction of the St. Louis County Juvenile Court. When the St. Louis police officers requested C. W., Jr. to accompany them to St. Louis from C. W., Jr.'s St. Louis County home, the police officers were required to give him additional and special treatment, meaning that they were required to take him to the St. Louis County Juvenile Court, and, if it can be assumed that he could understand, C. W., Jr. should have at least been advised that by leaving St. Louis County to go into St. Louis he could be waiving the jurisdiction of the St. Louis County Juvenile Court. The St. Louis police knew that C. W., Jr. had previously been taken into custody in St. Louis County for similar offenses as in this case; they also had reason to suspect C. W., Jr. of committing the crime. The possibility existed that interrogation of C. W., Jr. would reveal that he was involved in the commission of the offense, and in view of the need for special treatment of juveniles with the attendant possible waiver of jurisdiction, C. W., Jr. and his mother should have been advised of that possibility. Failure to do so was error, and we find that the St. Louis Juvenile Court was without jurisdiction in this case. Under the circumstances of this case, it cannot be said that C. W., Jr. was "found" within the territorial jurisdiction of the City of St. Louis and the manner in which he was taken to St. Louis is inimical to the holding of In Re M. W., *supra.* Jurisdiction of C. W., Jr. would properly be within the St. Louis County Juvenile Court.

The order, judgment and decree of the St. Louis Juvenile Court is therefore reversed.

SMITH, P. J., and CLEMENS, J., concur.