THE STATE OF MISSOURI, RESPONDENT, v. NANCY EVELYN FARRELL, APPELLANT.—237 S. W. 2d 492.

Kansas City Court of Appeals.   Opinion delivered February 5, 1951.

*Claude L. Schenck* for appellant.

*Russell D. Farris* and *Wilson D. Hill* for respondent.

SPERRY, C.—This is an action instituted in the juvenile court, by the prosecuting attorney of Ray County, wherein it is sought to have Nancy Evelyn Farrell, a female child 7 years of age, declared to be a neglected child within the meaning of Section 9698 R.S.Mo. 1939. After hearing much evidence the court found the child to be neglected and committed her to the custody of the probation officer of Ray County with instructions that he place her in a proper home pending the further orders of the court. From that judgment the child's mother, Mrs. Hildebrand, prosecutes this appeal.

The transcript of evidence is quite voluminous. We will attempt to set out, briefly, the gist of it.

The child's mother, Evelyn Hildebrand at the time this hearing was had, has been unfortunate in her marital affairs, and in life generally. She was married to Briley, when she was 19 years of age. They had four children, the oldest being Lucille, now about fifteen years of age. She was divorced and married Farrell. They had two children, Nancy being one of them. She was divorced from Farrell and obtained custody of these children. A year or so later she married Harden and divorced him. In 1948 she married Westerdale and, four months later divorced him. In 1949 she married Hildebrand and, at the time the trial was completed, was living with him in Oklahoma, together with five of her children. The evidence discloses that she had lived at various places in Arkansas, Missouri, Kansas and Oklahoma during the past year or two, never more than a few weeks at one place. Apparently she had moved from ten to fifteen times during the year preceding the trial of this case. It is admitted that she traveled from place to place, habitually if not always, hitch-hiking, and that, frequently, she took one or more of the children with her; that such of the children as did not accompany her on these trips would remain alone at the home they then occupied; that she became acquainted with and received favors from numerous strange men whom she met while hitch-hiking; that various of the children, if not all, had been left or placed in different homes, at different times, for varying periods of time, for many years prior to the trial; that, about a year before the trial, she had received state aid for the support of the children and, for several months prior to the trial, four had been wards of the State, in various homes supervised by the State, at Rolla, Missouri. However, their custody seems to have been given to her during the extended recess of the trial, and before its completion.

Mr. and Mrs. Pointer, respectable citizens of Ray County, testified to the effect that, in November, 1948, they were driving from Springfield to Sedalia, where they then lived, and passed appellant walking along the highway; that it was cold and wet and they offered her a ride; that she stated that she was going to St. Louis to arrange with a children's institution to take her children; that she wanted to marry, had several proposals, but none of the prospects would take her children; that she had a stack of letters, which she read, from various men in different parts of the country, some of them proposing marriage; that she spent the night at the Pointer home, and went on to St. Louis the next morning; that she returned a day or two later and said that she was anxious to get home to her children because they would be out of coal and groceries; that Mr. Pointer bought coal and groceries and took her to her home, an abandoned farm house a mile or two from Louisburg, Missouri; that the house was filthy, the children dirty, poorly clothed, noses running, hair matted, and ravenously hungry; that they snatched a loaf of bread, which fell to the floor, and devoured it; that there was one bed with a mattress on the floor under it; that Mrs. Hildebrand had thirty or forty letters when she arrived home, from various men over the country, some of them containing money; that she opened, read and commented on them in their presence and in the presence of the children; that they told appellant that they would like to adopt one of the children if she was going to place them in homes; that she told them that she would have to place the oldest child somewhere other than in the St. Louis institution, that it would not accept her because of her age, and urged them to take Lucille; that they offered to take Nancy but did not want Lucille, but eventually did take her, temporarily; that several of the children begged to be taken; that the Pointers bought clothing and books for Lucille, entered her in school, and tried to improve her as they would their own child; that she was indolent, slatternly, disobedient, incorrigible; that they took her home after about a month; that appellant told them to take Nancy, which they did on the day appellant married Westerdale, who had answered one of her advertisements in the Kansas City Star, and sent her $10.00; that after she divorced Westerdale they thought she might demand custody of Nancy and discussed the matter with the prosecuting attorney of Pettis County; that she appeared at their home and demanded to take Nancy but they refused permission; that the probation officer was called and refused to permit her to take the child; that they moved to Richmond, having informed the Pettis County authorities thereof; that appellant appeared there and demanded Nancy's custody and they again refused; that the probation officer of Ray County had been informed of the situation and they cooperated with him in this respect.

A school teacher of Richmond, testified to the effect that appellant attempted to forcibly take Nancy away from school but that the little

girl loudly protested and the witness prevented appellant from taking her.

The Pettis County probation officer testified to the effect that he discussed with appellant her fitness to care for the child, she not having any home and being then on a hitch-hiking trip; that she said if all it took to get Nancy was for her to be married she would soon take care of that.

She eventually appeared in Richmond and demanded custody from the Pointers and this action by the Ray County authorities followed.

While there is no direct evidence of appellant having engaged in immoral conduct, yet there are many suspicious circumstances, adding up to a moral certainty of that fact. She received many male callers at her various homes, some of whom would stay all night. She embraced one of said men in the presence of the children, on the roadway, in daylight. She advertised for position as housekeeper and received numerous letters in answer, some of which contained money. Two of her husbands were contacted in this manner; and she met a third while hitch-hiking. He proposed the first night, she accepted immediately, and married him. That was Hardin.

The evidence discloses that on one occasion, at least, the Springfield authorities required her to remove the children from a rooming house because the environment was considered to be improper for them. Lucille conducted herself in an improper manner with a hitch-hiking acquaintance, in the presence of appellant and without censure from her, in front of Pointers' home on an occasion when appellant had come to see Nancy. Nancy also could have witnessed Lucille's conduct.

The court found that Nancy is a neglected child, had been abandoned by appellant, and suffers from the depravity of appellant. (Her father's whereabouts have been unknown for many years). The evidence is sufficient to justify a finding to that effect. Nancy has received no support from appellant for about a year. She has never known a settled orderly life with appellant. She has been subjected to the constant moving about, hitch-hiking, and association with all kinds of people with whom appellant associated.

Appellant's admitted association with hitch-hiking companions and other male friends and acquaintances. Her solicitation and acceptance of money from divers strange men and her condonation of Lucille's improper conduct in the presence of herself, the Pointers, and Nancy, denotes her depravity. Depravity is defined as being a deficiency of moral sense and rectitude. Knepper v. Knepper, 139 Mo. App. 493, 499.

However, appellant contends, in her brief, that the information herein fails to state a cause of action. It charges that Nancy is a neglected child, has been abandoned by her parents, that appellant is immoral and associates with immoral persons. It is sufficient. State v. Wickliff, 114 S. W. 2d, 158, 160; State v. Hyman, 230 S. W.

2d, 504, 508. We have, in effect, so held in a habeas corpus proceeding previously instituted by appellant's attorney against the Pointers, our file No. 21409. We dismissed the writ because of the pendency of this cause in juvenile court of Ray County.

It is also contended that the Ray County juvenile court was without authority to adjudge Nancy to be a neglected child for the reason that she was illegally imported into the county without appellant's consent. This contention cannot be sustained. The spirit and purpose of the law is to extend the State's protection to all children who are "neglected" within the meaning of the statute. If a child is neither resident of, nor found in, a given county, there is no jurisdiction vested in such county; but the statute (Section 9698) does not limit jurisdiction to the county wherein a child's parents or guardian may reside, but authorizes the agents of the State to act wherever such a child may be. State ex rel. v. Porterfield, 244 S. W. 966, 967. A rule such as appellant contends for would result in excluding from the benefit of the law any child whose parents were not shown to reside in the county where the child is found.

The evidence was sufficient to justify a finding that Nancy has never been adequately provided for by appellant or her father; that she has long been dependent upon the charity of the public for proper support; and that she has suffered, and will continue to suffer, if appellant is granted custody, from the moral degeneracy and depravity of appellant.

The judgment should be affirmed. *Bour, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.