FOURNET, Chief Justice.
Charles Pratts is appealing from a judgment of the Juvenile Court for the Parish of-Orleans decreeing his minor child, Alicia, to be a neglected child and awarding her custody to the mother.
The record shows the parents of this minor, following their marriage, moved into the residence of the father’s parents at 4515 Annette Street in New Orleans, Louisiana, where they lived for approximately eight and a half years. Their two. children, the subject child, Alicia, age five, and her sister, Margaret, age three, were both born in this house. The father, a seaman, was frequently away from home on trips, and, in 1951, while he was at sea, the mother, apparently upon the order of her father-in-law, left this home and moved into the rooms occupied by her own parents, aunt, and the aunt’s children. On February 25, *129 1952, and while the father was again at sea, the mother, having secured a warrant upon her own affidavit (in which she declared Alicia was a neglected child “in that she is * * * without proper parental care or guardianship; parents separated”) and accompanied by two juvenile officers, removed the child from the home of the paternal grandparents.
Following a preliminary hearing on March 12, 1952, the judge awarded the temporary custody of this child to her mother, holding the final decision under advisement pending an investigation of the mother’s home and condition. After a further hearing, the judge, on April 16, 1952, found the • child to be neglected within the meaning of Section 13 :1671-1698 of the LSA-Revised Statutes of 1950 (which sections were specifically repealed by Act 82 of 1950), despite the fact the evidence conclusively showed Alicia was given every care her needs required, it being his opinion that unless the mother is shown to1 be unworthy, unfit, or otherwise unable to care for the child, the mother should have the custody. He rendered judgment accordingly. The father, through counsel, is appealing, contending the suit is nothing more than one to determine the party having a right to the custody of a minor who is not neglected and that the Juvenile Court was, therefore, without jurisdiction in the matter.
The state legislature, by its Act 82 of 1950 (which repealed all previous laws in conflict therewith, and particularly Chapter 6 of Title 13 of the LSA-Revised Statutes of 1950, being Sections 13:1561-1809), and acting within the scope of Sections 52 and 96 of Article VII of the Constitution of 1921, as amended, created the Juvenile Court for the Parish of Orleans, giving the judges thereof exclusive original jurisdiction over minors under seventeen years of age adjudged to be “neglected” within the conditions set forth in Section 1570, subsection 1, paragraphs A and B, i. e., any child “(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well-being; or who is abandoned by his parent or other custodian; or who is otherwise without proper care, custody, or support”, or “(2) Whose occupation, behavior, environment or associations are injurious to his welfare.” These judges are, further, given the authority to award the custody of such a child “to an .agency, institution or individual when the parent or other person having custody of the child wishes to relinquish custody or care for the purpose of enabling the child to receive adequate care and protection.” Sub-section C of Section 1570.
From the foregoing provisions it is obvious that the juvenile court’s right to. determine who is to have the custody of a child is limited to those that are adjudged to be neglected children.
*131 Clearly the juvenile court was without jurisdiction, for the facts of this case show the subject child lived in a nice home, was well fed and clothed; that she attended St. Raymond, a private school for colored children; had toys, including a bicycle; was given piano lessons) a piano having been bought especially for her; that a policy was taken out to cover her medical care; and that she was sheltered and loved in every way. The moral character of the paternal grandparents is not questioned, and neither are the surroundings of the home in which she lived. The 'mother herself, the affiant, testified the child was-not neglected and that she was well provided for.
For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered, adjudged, and decreed that the subject child, Alicia Pratts, be returned to the custody of her father, Charles Pratts, and delivered at the home of the paternal grandparents, 4515 Annette Street, in the City of New Orleans, Louisiana, from where she was removed.