310 So.2d 614 (1975)
STATE of Louisiana In the Interest of Coby Allen KING et al.
No. 55371.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*615 D. Douglas Howard, Jr., Laurence D. Rudman, New Orleans, for applicant, Stephanie Wallace King.
M. L. Juran, Metairie, for respondents, the King Children.
CALOGERO, Justice.
We granted writs in this case (302 So.2d 32) to review a decision of the Fourth Circuit Court of Appeal (299 So.2d 548) affirming the judgment of the Juvenile Court for the Parish of Jefferson declaring four minor children (Coby Allen King, Allison Beth King, Lisa Robin King, and Daniel Seth King) neglected children and awarding their custody to Frederick King, their father.
The nominal parties are the State of Louisiana in the interest of the four minor children and Mrs. Stephanie King, mother of the four children, respondent in the Juvenile Court, appellant in the Court of Appeal, and relator in this Court. Actually though not nominally a party is Mr. Frederick King, father of the four minor children and the person to whom custody was given in the trial court judgment below.
The issue posed to the Court of Appeal and renewed by the applicant mother in her assignments of error directed to this Court is whether the Juvenile Court for the Parish of Jefferson had jurisdiction to entertain this matter and if so whether that court's judgment finding the children neglected was erroneous upon the facts shown.
The pertinent facts which we find supported by the record (and to which there is little or no dispute) were summarized in the dissenting opinion in the appellate court decision as follows:
"On October 15, 1971, Stephanie King initiated domestic proceedings against her husband, Frederick King, in the Supreme Court of New York, where they were both domiciled and residing at that time. These proceedings contain statements by both parties, bitterly attacking the behavior and character of each other, impugning each other's moral conduct and reflecting upon each other's suitability as custodian of the four children born of their marriage. The proceedings terminated with an order signed by the court on February 25, 1972, awarding to Mrs. King the custody of the four children with visitation rights in favor of the father, and for the payment of $250 per week to Mrs. King as temporary *616 alimony and support for the children.
"In July, 1972, Mr. King moved to Jefferson Parish in connection with his taking a position in New Orleans, and shortly thereafter in the exercise of his visitation rights and with the approval of Mrs. King he brought his children to Louisiana for the celebration of a holiday. When this visit reached its planned conclusion ... [the children did not return to New York]... and it became necessary for Mrs. King, accompanied by her mother, to come to Louisiana and by force return the four children to their domicile in New York.
"On Friday, October 5, 1973, while King was in New York in the exercise of his visitation rights he obtained the cooperation of his four children, ages 12, 11 (twins) and 8, to board an airplane with him in New York and to return to his home in Jefferson Parish. This was done without knowledge or consent on the part of Mrs. King, and the four small children made their exit with no baggage or belongings other than the clothes which they were wearing. Shortly after their arrival in Jefferson Parish, on Saturday, October 6, 1973, Mr. King's attorney arranged with the Probation Counselor for the Jefferson Parish Juvenile Probation Department to initiate an investigation concerning these children, upon informing him that these children were being denied their constitutional rights and were in need of the supervision of the court.
"On October 9, 1973, the Chief Probation Counselor filed a petition in behalf of the State and in the interest of the children on the jurisdictional allegations that `they are alleged to be neglected children in that their environment is injurious to their well-being. This Court has jurisdiction under the provisions of R.S. 13:1570A(2).' The petition prayed that formal jurisdiction be taken by the Juvenile Court. Thereupon the court issued an order awarding to King temporary custody of the children, effective October 7, 1973, `considering that an emergency exists and the Court being of the opinion that it is for the best interest of the minor children.' Mrs. King excepted to the jurisdiction of the court and a lengthy trial was held on November 26, 1973, resulting in a judgment, signed on January 28, 1974, declaring the four children to be neglected children and awarding custody to their father. The only reasons assigned were `After a lengthy hearing, considering the testimony of all witnesses and particularly the testimony of the four King children, together with the pleadings and the evidence, the law and the evidence, being in favor of Mr. Frederick King, petitioner.'"
We find it unnecessary here to relate the evidence adduced at the hearing concerning the alleged injurious environment afforded the children in their mother's home in New York. Likewise, we find it unnecessary to pass judgment on the juvenile court judge's finding of fact and his conclusion that the four King children were indeed being reared in an environment injurious to their welfare. For our purposes, it is sufficient to state that the evidence demonstrated that the injurious environment, assuming Mrs. King's home is properly so labeled, existed in the State of New York.
La.R.S. 13:1570, under which this proceeding was maintained, provides in part as follows:
"Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:

(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, *617 when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well-being; ... or who is otherwise without proper care, custody, or support ...
(2) Whose occupation, behavior, environment or associations are injurious to his welfare." (Emphasis supplied) ..."
To be vested with jurisdiction, the juvenile court must find that at least one set of the circumstances spelled out in the statute exist [In re Pratts, 222 La. 126, 62 So.2d 124 (1952); In re Knight, 212 La. 357, 31 So.2d 825 (1947); State v. Brockner, 207 La. 465, 21 So.2d 499 (1945)], and the child must be a Louisiana domciliary or must be "found within the parish."
As far as we are able to discern, the instant case is the first one presented to this Court in which the children who are the subjects of the neglect proceedings are not Louisiana domiciliaries. In the instant case, jurisdiction was premised on the fact that the King children were found within the parish.
The phrase "found within the parish" would hardly seem to apply to children who, like the King children, were brought into the state by a parent, and who, while in Louisiana, were not being neglected or subjected to an injurious environment, and were not in any other way within the circumstances described in R.S. 13:1570.
There is no evidence that the King children were neglected or living in an injurious environment while in Louisiana. To the contrary, the juvenile court, after the hearing, saw fit to award custody of the children to their father, with whom they had been residing in the State prior to the hearing.
An action to declare a child neglected under R.S. 13:1570 is a drastic action, resulting in the children becoming wards of the state even though the court may grant custody of the children to an individual, including a parent, or may place the children in a foster home or an institution. La.R.S. 13:1580.
Barring an emergency situation, and clear statutory authority, we do not find that Louisiana has an interest in the King children, domiciliaries of New York, comfortably residing in Metairie, sufficient to warrant its intrusion into what is obviously a custody dispute between Mr. and Mrs. King. Such an intrusion is not warranted and is not necessary for the welfare of the children.
There are other alternatives available to Mr. King by which he may obtain legal custody of his children upon a showing that circumstances warrant modification of the New York custody decree entered over one year prior to these proceedings. One such obvious resort is for him to seek a change of custody in New York. There may well be others which we need not explore here.
When we closely examine the facts of this case and the procedures employed, it is apparent that the initiation of neglect proceedings by Mr. King was hardly more than an attempt by him, aided by a bit of self help (he spirited his children away from their custodian and their domicile) to use the State of Louisiana through its juvenile neglect laws to wrest custody of his children from his wife.[1] Mr. King brought the four children into the state and then proceeded to ask this state to declare unfit the children's environment in New York.
Under these circumstances, we hold that there is no jurisdiction in the Juvenile Court for the Parish of Jefferson under the provisions of R.S. 13:1570.
*618 For the foregoing reasons, the judgment of the Fourth Circuit Court of Appeal, affirming the judgment of the Juvenile Court for the Parish of Jefferson, is reversed, relator's exception to the jurisdiction of the court is maintained, and the proceedings instituted by the State of Louisiana in the Interest of Coby Allen King, et al. is dismissed.
SANDERS, C. J., dissents and will assign written reasons.
SANDERS, Chief Justice (dissenting).
The statute applicable to the present case, LSA-R.S. 13:1570, provides, in pertinent part:
"Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:

(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well-being; ... or who is otherwise without proper care, custody, or support.
(2) Whose occupation, behavior, environment or associations are injurious to his welfare." (Italics mine.)
The majority holds that the Jefferson Parish Juvenile Court had no jurisdiction, though the children were within the parish, because the misconduct of the custodian occurred in New York. I disagree.
Under the juvenile court law, "neglected child" is a status, arising from the absence of proper care by the legal custodian or from environmental conditions injurious to a child's welfare. LSA-R.S. 13:1569(16) pertinently defines a neglected child as a child "who is without proper parental care and control, or subsistence, education, medical or other care or control necessary for his well being because of the faults or habits of his parents, tutor, or other custodian or their neglect or refusal, when able to do so, to provide them." If a factual basis exists, a child occupies the status, irrespective of where the custodial conduct occurred.
Here, as found by the Court of Appeal, the evidence strongly supports the classification. See 299 So.2d 548. The Juvenile Court judge's finding of the factual basis for the proceeding is entitled to great weight and should not be reversed except on a clear showing of error. See In re State ex rel. Thaxton, La.App., 220 So.2d 184 (1969). It makes no difference that persons other than the legal custodian are able and willing to provide a proper home for the children. In determining neglect, the law looks to the legal custodian. Hence since the children were in Jefferson Parish, the Juvenile Court of that parish had jurisdiction to take protective action. LSA-R.S. 13:1570A.[1]
In State v. Farrell, 241 Mo.App. 254, 237 S.W.2d 492 (1951), the Missouri Court of Appeal correctly disposed of the jurisdictional issue raised here, when it stated:
"It is also contended that the Ray County juvenile court was without authority to adjudge Nancy to be a neglected child for the reason that she was illegally imported into the county without appellant's consent. This contention cannot be sustained. The spirit and purpose of the law is to extend the State's protection to all children who are `neglected' within the meaning of the statute. If a child is neither resident of, nor found in, a given county, there is no jurisdiction *619 vested in such county; but the statute, Section 9698, does not limit jurisdiction to the county wherein a child's parents or guardian may reside, but authorizes the agents of the State to act wherever such a child may be. State ex rel. Emory v. Porterfield, 211 Mo.App. 499, 244 S.W. 966, 967. A rule such as appellant contends for would result in excluding from the benefit of the law any child whose parents were not shown to reside in the county where the child is found."
For the reasons assigned, I respectfully dissent.
NOTES
[1] See 22 Vand.L.Rev. 1207 for a discussion of the problem of self-help and of the need for adoption of the Uniform Child Custody Jurisdiction Act.
[1] LSA-R.S. 13:1571.5 authorizes the transfer of the case to the state of domicile in the discretion of the Juvenile Court judge.