966 S.W.2d 292 (1998)
STATE of Missouri, ex rel. In the Interest of R.P., Relator,
v.
Commissioner Sherrill L. ROSEN, Respondent.
No. WD 54905.
Missouri Court of Appeals, Western District.
January 20, 1998.
Motion for Rehearing and/or Transfer to Denied March 3, 1998.
Application to Transfer Denied April 21, 1998.
*294 M. Courtney Koger, Blackwell Sanders Matheny Weary & Lombardi, LLP., Kansas City, Guardian ad Litem for R.P.
Carolyn D. Rowe, Independence, for Division of Family Services.
Daniel G. Barry, Kansas City, for Juvenile Officer.
W. Stephen Nixon, Independence, for Natural Father.
Susan D. Szczucinski, Kansas City, for Natural Mother.
Before LAURA DENVIR STITH, P.J., and SMART and HOWARD, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.
LAURA DENVIR STITH, Presiding Judge.
This case involves the question of whether the Family Court Division of the Jackson County Circuit Court had jurisdiction over an abuse and neglect proceeding brought by the Juvenile Officer and concerning R.P., a newborn infant alleged to be at serious risk of physical and sexual abuse. The Family Court Commissioner ruled that, because the child had been brought into Missouri from Kansas by a Missouri state employee two days after her birth, the Jackson County Court did not acquire jurisdiction and, therefore, could not adjudicate R.P.'s custody. The court, therefore, determined, it was required to release R.P. to her parents' custody despite its further finding that it was in R.P.'s best interest that Missouri exercise jurisdiction, and that it would contravene public policy to release R.P. to her parents. The court delayed the effect of its ruling to give time to the parties to seek a Writ from this court. Relators then filed their Petition for Writ of Prohibition or Mandamus in this court. We issued our Preliminary Writ of Prohibition. We now make that writ permanent.
I. FACTUAL AND PROCEDURAL BACKGROUND
R.P. was born at the Kansas University Medical Center (KUMC), in Kansas City, Kansas, on April 15, 1997, to C.P. (father) and S.P.(mother). Missouri Medicaid paid the hospital bills which ensued from R.P.'s birth and from S.P.'s and R.P.'s hospital stay. Shortly after R.P.'s birth, a social worker at the hospital discovered that the parents were homeless and that the Missouri Division of Family Services (DFS) had previously removed six children from their custody. The social worker indicated that the father appeared to be attempting to get the mother and R.P. out of the hospital before the social worker could "clarify the situation." The mother had indicated that she had a restraining order on the father in the past and that she had called the police on him on several occasions. The parents indicated to the social worker that they intended to return to City Union Mission, in Jackson County, Missouri, with the minor child. The social worker determined that since other children had been removed from the parents, the father had a history of violence, and the parents behaved as if they were trying to run with the baby, it was too risky to allow this baby to leave the hospital without "the approval of Child Protective Services." She completed a suspected child abuse and/or neglect report and discussed the case with her supervisor, who told her that since the parents had indicated an intent to return to Missouri, it was a "DFS case." The social worker called Missouri's DFS.
A police officer from the University of Kansas Police Department prevented R.P.'s parents from leaving with her. The officer completed a juvenile data sheet and took the minor child into protective custody. Dr. Curry signed the juvenile form at 2:30 p.m. on April 17, 1997, and assumed responsibility for R.P. pending the arrival of the a representative of Missouri's DFS. The Juvenile Officer of Jackson County, Missouri, then issued a pick-up order. A DFS caseworker, Kelly Wiemann, was authorized by the order to pick up R.P. for placement in DFS custody. She came to the hospital to pick up the child from Dr. Curry at KUMC at 3:30 p.m. on April 17, 1997, and transported her to Missouri. On April 18, 1997, the juvenile officer filed a Petition alleging that R.P. was in need of care and treatment, and on April 24, 1997, the juvenile officer amended this Petition. C.P. (the natural father) challenged the court's jurisdiction to proceed. On July 17, 1997, at 2:28 p.m., the juvenile officer voluntarily dismissed the amended *295 Petition but then filed a new Petition at 2:54 p.m. that same day.
On July 23, 1997, C.P. filed a Motion to Dismiss the amended Petition, again alleging that the court lacked jurisdiction to proceed. A hearing on this motion was held on September 5, 1997. On September 8, 1997, Sherrill L. Rosen, the Family Court Commissioner, notified the parties by a Notice of Intent to Enter Order of her decision to grant the motion to dismiss for lack of jurisdiction. Commissioner Rosen noted that:
Six siblings of the minor child are presently under the jurisdiction of this Court, pursuant to judgments of this Court made August 23, 1996. In those matters, this Court found the children had been sexually abused by the natural father; that the natural mother was aware of the sexual abuse but failed to protect the children; that there was a history of domestic violence; that both parents had a history of substance abuse; that the children had previously been under the jurisdiction of Walla Walla, Washington Juvenile Court, but the natural parents absconded with the children from the State of Washington; and that the natural mother has had her parental rights terminated with regard to three other children by the State of Kansas and two other children in the State of Oregon.
The court, nonetheless, concluded that DFS "had no legal authority on April 17, 1997 to remove the minor child from the State of Kansas to Missouri" and that the court, therefore, lacked jurisdiction over this child's custody determination under Section 211.031. That section requires that the child "be a resident of or found within the county" before that county court has jurisdiction over an action involving that child. The court further concluded that the voluntary dismissal and filing of a new Petition did not cure this defect, nor confer jurisdiction on the court, under either Section 211.031 under the Uniform Child Custody Jurisdiction Act, or Section 452.450, because "there was no original legal authority for the child to be in this county."
While finding it lacked jurisdiction, the court further found that:
[R]equiring return of the minor child to the custody of the natural parents is in direct contravention of the legislative intent of Chapter 211, which states that the child welfare policy of this state is what is in the best interests of the child. In being required to sustain this motion for lack of jurisdiction, the Court makes a specific finding that to do so is not in the child's best interests, and violates the public policy of the State of Missouri.
(emphasis added). The court then stayed entry of its order sustaining C.P.'s motion to dismiss, to allow any party to file a petition for an extraordinary writ in this court prior to the effective date of her order.
DFS, the Juvenile Officer, and R.P.'s Guardian Ad Litem (Relators), filed a Petition for a Writ of Prohibition and/or a Writ of Mandamus with this court to prohibit Commissioner Rosen from releasing jurisdiction over R.P. or, alternatively, to command Commissioner Rosen to exercise her jurisdiction to protect R.P. We issued a Preliminary Writ of Prohibition on September 22, 1997. This proceeding for a permanent writ followed.
II. A WRIT OF PROHIBITION IS AN APPROPRIATE REMEDY
There are three situations in which we may issue a writ of prohibition:
First, prohibition will lie where there is a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction. Id. at 862 Second, a writ of prohibition will issue to remedy a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated. Id. Finally, departing from jurisdictional grounds, a writ of prohibition will be issued if the party can satisfy a number of conditions, after falling under the rubric of no adequate remedy by appeal.
State ex rel. Chassaing v. Mummert, 887 S.W.2d 573, 577 (Mo. banc 1994) (citations to State ex rel. Noranda Aluminum, Inc. v. Rains, 706 S.W.2d 861, 862-63 (Mo. banc 1986)). Relators claim they are entitled to seek a writ here because there is "no adequate remedy by appeal." Writs of prohibition will be issued in this situation only "in *296 limited situations where some `absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order.'" Chassaing, 887 S.W.2d at 577, quoting, State ex rel. Richardson v. Randall, 660 S.W.2d 699, 701 (Mo. banc 1983). This will occur if "there is an important question of law decided erroneously that would otherwise escape review by this court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision." Chassaing, Id. at 577, citing, Noranda, 706 S.W.2d at 862-63.
This action clearly meets the requirements of this third category. We have found that the court below erroneously decided a question of law as to whether it had jurisdiction to determine this child's custody. Since the filing of a notice of appeal subsequent to the court's erroneous dismissal of this Petition will not stay the execution of that dismissal, both R.P. and the State will suffer considerable hardships because of this erroneous entry of dismissal, and the relators have no adequate remedy upon appeal. More specifically, if we do not make our writ absolute, R.P. will be released from DFS's custody and be returned to her parents. The Petition alleges that these parents have a history of physically and sexually abusing their children. They have also previously fled from other states to avoid those states' protection of their children. The dangers to the child are apparent. Thus, if what is stated in the Petition is true, irreparable harm is likely to result and the State will have failed to protect a child, which it has a duty to do in its role as parens patriae. Therefore, we have jurisdiction to enter a Writ of Prohibition.
III. MISSOURI HAS JURISDICTION OVER THE CHILD UNDER SECTION 211.031 AND UNDER THE UNIFORM CHILD CUSTODY JURISDICTION ACT
A. The Contentions of the Parties.
The issue for our resolution is whether Missouri has jurisdiction to decide the custody of R.P. under Section 211.031, RSMo. and under the Uniform Child Custody Jurisdiction Act, also known as the UCCJA. Because the court's jurisdiction under Section 211.031 attaches at the time the child is taken into custody, the initial relevant date for inquiry here is April 17, 1997, the day the juvenile officer issued the pick-up order for R.P. and the day that she was taken into custody. § 211.131.3; In re C.G., 539 S.W.2d 705, 706 (Mo.App.1976). Respondents contend that the court had no jurisdiction to decide R.P.'s custody at that time because she was not then "a resident of or found within the county," as required by Section 211.031. They further argue that at the time the initial Petition was filed, R.P. was not legally found within or a resident of Jackson County, but rather had been illegally removed from KUMC where she was born, and that as a result only a Kansas court had jurisdiction to determine her custody.
Relators contend that we should not consider whether the court below had jurisdiction at the time the initial Petition was filed, nor any impropriety in the method by which she came into this State thereafter, for that Petition was dismissed and a new one filed on July 17, 1997. At that point, R.P. had been present in Missouri for three months, since the time DFS took custody of her on April 17, 1997.
Respondents counter that we should ignore R.P.'s physical presence in Missouri at the time of the filing of the second Petition, because she came into Missouri illegally in the first instance and the effects of that illegality could not be avoided by the "trick" of dismissal and refiling. Respondents' argument assumes both that the court below's jurisdiction could only be based on R.P.'s physical presence in the state, and that the law does not recognize her as being "legally" present where, as here, that presence was acquired by illegal or improper means. For the reasons discussed in the remainder of this opinion, we find that both of Respondents' assumptions are incorrect. As discussed in Sections IIIB and IIIC below, neither Section 211.031, RSMo 1996 nor the UCCJA, as adopted in Missouri in Section 452.450 et. seq., state that only the state in which the child is physically present has jurisdiction over the child. To the contrary, those statutes recognize that a county and state may have jurisdiction to determine a *297 child's custody when the child is not present in that county or state. As discussed in Section IV below, whether or not a court's jurisdiction over a child is based on physical presence, the court does not lose jurisdiction simply because the child was brought into the state or county by improper means, although in such circumstances a court could, under equitable principles, decline to exercise the jurisdiction it otherwise has under the relevant statutes.
B. The Court Below Had Jurisdiction to Determine R.P.'s Custody under Section 211.031 Based on R.P.'s Parents' Residence in Jackson County.
Both Petitions asserted that the Jackson County Family Court had jurisdiction over R.P. pursuant to Section 211.031.1(1)(b), which states in relevant part that:
1. [T]he juvenile court or family court in circuits that have a family court ... shall have exclusive original jurisdiction in proceedings:
(1) Involving any child or person seventeen years of age who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:
. . . .
(b) the child or person seventeen years of age is otherwise without proper care, custody or support; ...
§ 211.031.1 (emphasis added).
It is conceded that R.P. is under seventeen years of age, and that the Petition properly alleged that she was without "proper care, custody or support." Respondents argue, however, that R.P. was not a resident of Jackson county, as she had never lived there, and that since she could not be found within the county when she was taken into custody, the county could not acquire jurisdiction to determine her custody by illegally removing her from Kansas to Missouri.
It is correct that, in order to be "found within" a county, one must be physically present in that county. In re Jackson v. Shannon County Dept. of Social Services, 592 S.W.2d 320, 321 (Mo.App.1979). The statute also provides the court with jurisdiction over a child who is a resident of the county, however. We find that, without regard to where R.P. was present at birth or how she came to be present in Missouri, the Jackson County Family Court has jurisdiction to determine her custody, for she has been a "resident of" Jackson County, as that term is used in the statute, from the time of her birth.
More specifically, both Missouri and Kansas law provide that a child's residence is that of its parents if they live together. If not, then it is the residence of the parent having custody of the child. In re Jackson v. Shannon County Dept. of Soc. Serv., 592 S.W.2d 320, 321 (Mo.App.1979); In re Adoption of Baby Girl B., 19 Kan.App.2d 283, 867 P.2d 1074, 1078 (1994). Here, both parents resided at a homeless shelter in Missouri prior to R.P.'s birth and, by their own admission, planned to return there to live with R.P. once they left the hospital with R.P. This made Missouri their domicile and residence. State ex. rel Quest Communications Corp. v. Baldridge, 913 S.W.2d 366, 369 (Mo.App. 1996); Elder v. Metropolitan Property and Casualty Co., 851 S.W.2d 557, 561 (Mo.App. 1993); Byars v. Byars, 593 S.W.2d 656, 658 (Mo.App.1980); State Farm Mut. Auto. Ins. Co. v. McBride, 489 S.W.2d 229, 232 (Mo. App.1972). It, therefore, was also the residence and domicile of R.P. from the moment of her birth, without regard to the fact that she happened to be born in a hospital located a few blocks across the boundary line separating Missouri and Kansas. Jackson County, therefore, had jurisdiction to determine her custody under Section 211.031.1.[1]
C. The UCCJA, Adopted in Missouri and Kansas As a Way to Resolve Jurisdictional Disputes Over Custody, Recognizes Missouri Has Jurisdiction To Determine R.P.'s Custody.
*298 While Respondents do not directly address the above arguments based on residence, they do argue that Kansas rather than Missouri should be considered to have jurisdiction over R.P. because Kansas is R.P.'s "home state" under the UCCJA. To the contrary, we find that R.P. has no "home state" as that term is used in the UCCJA, but that other provisions of the UCCJA authorize Missouri's exercise of jurisdiction to determine R.P.'s custody.
1. Applicability of UCCJA.
Relators contend that the UCCJA does not apply to this proceeding. However, the UCCJA itself and case law interpreting it suggest otherwise. The UCCJA has been adopted in Missouri and is codified at Sections 452.440 to 452.550, RSMo 1994. Our review of this statute and case law in Missouri and other states suggests that this statute does apply to proceedings, such as this, in which the state alleges that the child is in need of care and treatment and, thereby, seeks to obtain custody of the child.
More specifically, this proceeding was brought in the family court below and Section 487.110 provides that the UCCJA "shall apply to all custody proceedings in the family court." § 487.110. Section 452.445(1) defines "custody determination" as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights. This term does not include a decision relating to child support or any other monetary obligation of any person...." § 452.445(1). Section 452.445(2) then specifically defines a "custody proceeding" as including "proceedings in which a custody determination is one of several issues, such as an action for dissolution of marriage, legal separation, separate maintenance, appointment of a guardian of the person, child neglect or abandonment, but excluding actions for violation of a state law or municipal ordinance." § 452.445(2)(emphasis added). Furthermore, In Interest of S.L, 872 S.W.2d 573, 576 (Mo.App.1994), has applied the UCCJA to a juvenile proceeding involving alleged abuse and neglect, although, in doing so, the court assumed for purposes of appeal that the UCCJA applied, finding it unnecessary to decide the issue. Id.
Kansas's version of the UCCJA uses even more explicit language in stating that the UCCJA applies to this type of proceeding. It provides that a custody proceeding includes proceedings under its "code for care of children," which is comparable to Missouri's juvenile code. Kan. Stat. Ann. § 38-1302.(c). Both Missouri's and Kansas's versions of the UCCJA are simply slight variations from the Model UCCJA, which provides that a "custody proceeding" includes "child neglect and dependency proceedings." Unif. Child Custody Juris. Act § 2(3), 9 U.L.A. 133 (1988). Thus, it seems clear that the drafters of the Model UCCJA and the Missouri and Kansas versions of the UCCJA, intended the Act to apply to proceedings such as this one involving allegations of abuse and neglect. We note that, in applying the UCCJA to this type of proceeding, we join the majority of courts who have addressed this issue and have similarly interpreted the UCCJA to apply to similar stateinitiated proceedings. See, e.g., In Interest of K.G., 890 P.2d 647 (Colo.1995); In Interest of L.C., 18 Kan.App.2d 627, 857 P.2d 1375 (1993); In re C.O., 856 P.2d 290 (Okl.Ct.App. 1993); In re E.H., 612 N.E.2d 174 (Ind.Ct. App.1993), opinion adopted by, 624 N.E.2d 471 (Ind.1993); White v. Blake, 859 S.W.2d 551 (Tex.App.1993); In Interest of J.T., 168 Wis.2d 646, 485 N.W.2d 70 (1992); In Interest of A.E.H., 161 Wis.2d 277, 468 N.W.2d 190 (1991); In re Gloria F., 212 Cal.App.3d 576, 260 Cal.Rptr. 706 (1989); New Jersey Div. Youth & Family Serv. v. E.D., 233 N.J.Super. 401, 558 A.2d 1377 (1989); New Mexico ex rel. Dept. of Human Serv. v. Avinger, 104 N.M. 255, 720 P.2d 290 (1986); In re Pima County Juv. Action, 147 Ariz. 527, 711 P.2d 1200 (1985), approved in part and vacated in part on other grounds by, 147 Ariz. 584, 712 P.2d 431 (1986); In re David C., 152 Cal.App.3d 1189, 200 Cal.Rptr. 115 (1984). But see, State ex rel. R.N.J., 908 P.2d 345 (Utah Ct.App.1995).
2. Bases for Jurisdiction over Custody Determination Under UCCJA.
In Missouri's version of the UCCJA, Section 452.450 sets out the bases on which a particular state may exercise jurisdiction to decide a child's custody. Because of its importance *299 to the resolution of this case, we set out the statute in full:
1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state:
(a) Is the home state of the child at the time of commencement of the proceeding; or
(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because:
(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and
(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and:
(a) The child has been abandoned; or
(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.
3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
§ 452.450. Kansas has adopted an identical version of this section of the UCCJA at Kan. Stat. Ann. Section 38-1303(1993).
The primary purpose of the UCCJA is to ensure that custody determinations are made in accordance with, and in the state best suited to provide for, the welfare and best interests of the child. In re Adoption of Z.T.H. v. M.H., 910 S.W.2d 830, 836 (Mo. App.1995); In re Aldridge, Ledoux v. Aldridge, 841 S.W.2d 793, 802 (Mo.App.1992); Piedimonte v. Nissen, 817 S.W.2d 260, 269 (Mo.App.1991); Counts v. Bracken, 494 So.2d 1275 (La.Ct.App.1986); Roberts v. District Court of Larimer County, 198 Colo. 79, 596 P.2d 65 (1979). Other purposes of the UCCJA include: To avoid jurisdictional conflicts between states; to facilitate cooperation between states; to encourage stability for children; to ensure that a child's custody determination is made in the state with which the child and his family are most closely connected and where the most significant evidence concerning the child's custody is available; to deter forum shopping; and to ensure that states give full faith and credit to the custody determinations of other states, when made in accordance with the Act. See, e.g., Piedimonte v. Nissen, 817 S.W.2d at 266; Unif. Child Custody Juris. Act § 1, 9 U.L.A. 123-24(1988); Kan. Stat. Ann. § 38-1301(1993).[2]
Thus, if the court below's custody determination is to be given force in other states, it must be rendered in accordance with the procedures of the UCCJA. Since the UCCJA has been adopted in Missouri, *300 such compliance is also required under Missouri law. As is evident, the UCCJA requires consideration of numerous factors to determine whether a particular court has jurisdiction to make a child custody determination. Under Section 452.450.1, the court deciding custody must be competent to decide child custody matters. Here, it is uncontested that the court below, which is the Family Court Division of the Circuit Court of Jackson County, is competent to decide child custody matters.
The UCCJA then sets out four alternative bases on which a court may have jurisdiction to determine a child's custody. Only one of these alternative bases need be met in order for the court to acquire jurisdiction to decide the child in question's custody. We consider the four alternative bases in turn. As will become evident, only the third of these alternatives requires the physical presence of the child in the state.
a. Home State.
Section 452.450.1(1) provides that a state has jurisdiction to make a child custody determination if the state was the "home state" of the child at the time of the commencement of the proceedings or if the state was the home state of the child within the prior six months and one parent continues to live in the state. "Home State" is defined as
the state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as a parent, for at least six consecutive months; or, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
§ 452.445(4), RSMo.1994 (emphasis added); Kan. Stat. Ann. § 38-1302(e)(1993).
We disagree with Respondent's argument that Kansas was the home state of R.P. simply because that is where R.P. was born. Matter of Adoption of Baby Girl B., 19 Kan. App.2d 283, 867 P.2d 1074 (1994), rejected a nearly identical claim by the mother in that case that Kansas was the "home state" of an infant born to her in a Kansas hospital in which they both stayed on the night following the birth. In considering this argument, the court first noted that Kansas has adopted the UCCJA definition of the "home state" of a child less than six months old as being the state in which the child lived from birth with a parent or person acting as a parent. The court, nonetheless, concluded that Kansas was not the home state, stating:
The requirement that the child "live with" the mother from birth requires more than the mother and newborn child staying at the same hospital for a brief period.
Id. 867 P.2d at 1079. Similarly, Kansas is not the "home state" of R.P. simply because R.P. and her mother stayed in a hospital there for two days after R.P.'s birth; R.P. has never "lived with" her parents at all. Therefore, Kansas is not her home state.
We also disagree with Relators' claim that Missouri was the home state of R.P. at the relevant time. The only portion of the statute which establishes a home state for a child less than six months old provides that the home state is "the state in which the child lived from birth with" his parent, parents, an institution, or a person acting as a parent. § 452.445(4). At the time the first petition was filed, R.P. did not live in Missouri with her parents at all, and her placement by DFS, with a person acting as a parent, did not make Missouri the state in which she has lived since birth, because she was born in Kansas. Similarly, at the time the second petition was filed, R.P. had only been in Missouri for approximately three months. Therefore, she could neither fall under the provisions for children less than six months old nor under the more general definition of home state based on living in the state for at least six consecutive months.
As neither Kansas, Missouri, nor any other jurisdiction qualifies as the "home state" of R.P. under the UCCJA, Section 452.450.1(1) does not provide a basis for any court to exercise jurisdiction over R.P.. We therefore look to the other provisions of the Section 452.450 to see whether they provide Missouri with jurisdiction to decide R.P.'s custody.
b. Best Interests Based on Significant Connection with the State.
*301 Section 452.450.1(2) recognizes a court's jurisdiction to determine child custody if:
(2) It is in the best interest of the child that a court of this state assume jurisdiction because:
(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and
(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships;
§ 452.450.1(2).
Here, Kansas has no connection with R.P. or her parents other than the fact that the parents chose to deliver their child in a Kansas hospital. They were not living in Kansas at the time. By contrast, as noted above, they had been living in Missouri for a considerable period of time. They indicated to the social worker at the Kansas hospital that they intended to return to Missouri with their baby. For these reasons, as discussed above, Missouri was the residence and domicile of R.P. and both of her parents. Further, Missouri Medicaid paid for the expenses associated with the birth of R.P. and six of R.P.'s siblings and C.P's and S.P.'s children also resided in Missouri. We find this is sufficient to establish the significant connection between R.P., her parents, and Missouri, that is required under Section 452.450.1(2)(a).
In addition, substantial evidence concerning R.P.'s present or future care, protection, training and personal relationships is available in Missouri; almost none is available in Kansas. Although the mother had her parental rights to three other children terminated in the state of Kansas, those children were evidently not from her current relationship. Thus, so far as the record shows, Kansas has little or no evidence regarding this father's abusive behavior toward the mother or the other children. Also, because these terminations occurred before the more recent ones, the evidence Kansas has concerning the mother is more dated than in Missouri, the state in which the court below recently took jurisdiction over six of this mother's other children. Missouri has evidence that the father sexually abused R.P.'s siblings and that the mother was aware of this abuse and yet failed to protect her children. It also has evidence that R.P.'s parents have a history of domestic problems, and have substance abuse problems. The court below was also aware that these parents had previously fled with their offspring from the state of Washington, to avoid that state's attempts to protect their children. All of this evidence is relevant to R.P.'s future care, protection, training, and personal relationships, and has enabled the court below to make its explicit finding that it is not in R.P.'s best interest for it to return the child to her parents.
Thus, both prongs of Section 452.450.1(2) are satisfied. Given that there are no allegations that R.P.'s custody is the subject of a proceeding or order pending or entered in another state, and given that R.P. has no home state, satisfaction of this provision of the UCCJA empowers Missouri to decide the custody of R.P.
c. Physical Presence of Child Abandoned or in Need of Emergency Protection in State.
Respondents suggest that Kansas also had jurisdiction over R.P.'s custody determination at the time she was born under the Kansas equivalent to Section 452.450.1(3), which permits a court to exercise jurisdiction over a child who is physically present in the state if the child is abandoned or if such an exercise of jurisdiction is "necessary in an emergency to protect the child." § 452.450.1(3).
Assuming that this provision would have given Kansas jurisdiction over R.P. at the time of her birth, Respondents cite no authority suggesting that this Section would deprive Missouri of the jurisdiction over R.P. it otherwise has under Section 452.450.1(2). To the contrary, the comments to the Act make it clear that the bases of jurisdiction in Section 452.450.1(1)-(4) are set out in descending preferential order, and that the first two bases for jurisdictionhome state and significant connection with the family
establish the two major bases for jurisdiction. In the first place, a court in the *302 child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanism provided in sections 6 and 7 are used to ensure that only one state makes the custody decision.
Unif. Child Custody Juris. Act. § 3, comment, 9 U.L.A. 144 (1988); see also, Piedimonte, 817 S.W.2d at 270. Given that R.P. has no home state nor another state with which she has significant connections, Missouri's basis of jurisdiction under Section 452.450.1(2) takes precedence.
In addition, the comments to the Uniform Act and case law make it clear that more than one court may have jurisdiction. Unif. Child Custody Juris. Act. § 3, comment, 9 U.L.A. 144 (1988); State ex rel Laws v. Higgins, 734 S.W.2d 274, 277 (Mo.App.1987). The UCCJA, as adopted in both Missouri and Kansas, establishes that if more than one state is entitled to assert jurisdiction over the child, then other states should defer to the jurisdiction of the state in which suit is first filed. § 452.465, RSMo 1994; Kan. Stat. Ann. § 38-1306.[3] Here, no Kansas court has exercised jurisdiction over R.P. Therefore, assuming Section 452.459.1(3) would have permitted Kansas to assert emergency jurisdiction over R.P., because Kansas did not do so before Missouri acquired jurisdiction over the child under the Petition below, there is no reason for a Missouri court to defer to the hypothetical right Kansas may have once had to exercise jurisdiction over R.P. during the two days she was present in that state.
This conclusion is buttressed by the language of Sections 452.450.2, 452.450.3 and of the equivalent provisions of Kansas law. These sections state:
2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.
3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
§§ 452.450.2 & 452.450.3. See also Kan. Stat. Ann. § § 38-1303(b) & 38-1303(c).
Thus, physical presence is neither a necessary nor a sufficient basis upon which to assert jurisdiction under the UCCJA and, in any event, would give the court only temporary jurisdiction until the emergency concluded. In Interest of S.L., 872 S.W.2d 573, 575 (Mo.App.1994). For these reasons, as well as for the other reasons discussed above, we conclude that the mere fact that R.P. was present in Kansas at the time Missouri first exercised its jurisdiction does not serve to deprive Missouri of jurisdiction under the UCCJA.
d. No Other State Has Jurisdiction.
The UCCJA also authorizes a state to assert jurisdiction over a child if it appears that no state would have jurisdiction under the above provisions or that another state has declined to exercise jurisdiction and it is in the best interest of the child that this state assume jurisdiction. § 452.450.1.(4); Kan. Stat. Ann. § 38-1303(a)(4). Because Missouri has jurisdiction under subdivisions (2) and (3), subdivision (4) does not come into play. Therefore, we do not need to determine whether we could hold that Kansas has declined to exercise jurisdiction based on the *303 fact that Kansas juvenile authorities contacted the Missouri juvenile authorities, while R.P. was present in KUMC, and requested Missouri authorities take custody of R.P.
IV. JURISDICTION OTHERWISE PERMITTED BY THE UCCJA IS NOT VOIDED WHERE THE CHILD IS BROUGHT INTO THE FORUM STATE BY IMPROPER MEANS
For the reasons noted above, both Section 211.031 and Section 452.450 appear to give the court below jurisdiction to determine the custody of R.P. As already noted, however, Respondents argue that even if Missouri otherwise were permitted to exercise jurisdiction over R.P. under the above provisions, that jurisdiction is nullified by the fact that R.P. was improperly or illegally transferred from Kansas to Missouri without her parents' permission or a Kansas court order. Respondents cite to no provision of either the UCCJA or of Kansas or Missouri law to support their conclusion that a court cannot acquire jurisdiction of a child improperly brought within its boundaries. Rather, they simply assume that jurisdiction improperly acquired is no jurisdiction at all. That assumption is incorrect both under the UCCJA and under Missouri common law.
A. "Unclean Hands" in Bringing a Child into a Jurisdiction Does Not Deprive That State of Jurisdiction under the UCCJA.
While no provision of the UCCJA specifically addresses the effect of improper conduct by the state itself in bringing a child within its boundaries in order to protect it from harm, Section 452.475 of the UCCJA does specifically address the affect of such conduct by a petitioner for an initial decree and by a petitioner for modification of another state's decree on a state's jurisdiction. Section 452.475 states:
1. If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

2. Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child ... the court may decline to exercise its jurisdiction if this is just and proper under the circumstances....

§ 452.475 (emphasis added). In other words, while the improper method by which a child came into the jurisdiction may cause a court in equity to refuse to exercise jurisdiction over a child, it does not deprive the court of its otherwise existing legal subject matter jurisdiction to determine custody.
This follows from the fact that the type of improprieties addressed in Section 452.475 are what are traditionally described by the label of "unclean hands." A court of equity has power to deny relief to one with unclean hands, but the decision whether to do so is left to the court to make. In this instance, Section 452.475 makes it clear that the court should only refuse to exercise jurisdiction if it would be "just and proper" to do so. § 452.475.
Missouri courts have previously applied this provision and held that such "unclean hands" should not deprive the court of jurisdiction to decide child custody where the assertion of jurisdiction is in the best interests of the child, stating:
The "clean hands" provision does not affect a court's subject matter jurisdiction but only its decision whether it should exercise jurisdiction. State ex rel. Rashid v. Drumm, 824 S.W.2d 497, 501 (Mo.App. 1992). Moreover, the clean hands provision does not supersede the best interests of the child. Id. at 502. The paramount issue is the welfare of the child rather than the tactics of the parents. Id. The trial court concluded that in the best interests of the child, the adoption decree should not be set aside. We do not disturb this decision.
In re Adoption of Z.T.H., 910 S.W.2d at 836.
While Section 452.475 does not directly state that the clean hands provision applies in a situation such as this, in which juvenile authorities are alleged to have improperly *304 brought R.P. into this state in order to protect her from neglect and abuse by her parents, we see no reason why a different rule would apply. It would make no sense to hold that the method of bringing R.P. into the state deprived the court below of jurisdiction to protect the child from abuse, but not of jurisdiction to modify a custody award had the parents' marriage been dissolved.
B. Missouri Common Law Does Not Deprive Missouri of Jurisdiction To Decide A Child's Custody when the Child is Improperly Brought within its Borders.
Respondents suggest that Missouri cases do require such a different result, however, and that under Missouri law a court acquires no jurisdiction where a child comes within its borders through improper means. In support, Respondents cite us to In re Baby Girl v. Michael, 850 S.W.2d 64 (Mo. banc 1993).
We do not believe that this case controls. Most basically, it dealt with an attempt to adopt a child without compliance with the statutes governing adoption. The court properly held that, due to the failure to follow required procedures, the circuit court of the Missouri county in which the child was born and in which its mother resided retained jurisdiction of the custody of the child despite the fact that the purported adoptive parents had removed the child to Arkansas. Id. at 68. Here, of course, we do not deal with adoption, but with the custody of a child who is without proper care, custody and support. The statutes cited in In re Baby Girl, therefore, do not apply.
In any event, the principles set out in In re Baby Girl support the court below's exercise of jurisdiction, for at least two reasons. First, in this case, as discussed above, R.P. resides in Jackson County, Missouri. As this was R.P.'s residence, the court below had jurisdiction to determine her custody without regard to whether she was physically present in Missouri or how she got here. Therefore, even if jurisdiction based on physical presence would be nullified based on improper conduct under In re Baby Girl, there is no reason to think that jurisdiction based on residence would be nullified on this basis where the latter requirements were legitimately met.
Equally dispositive is the fact that In re Baby Girl did not hold that the improper adoption deprived the court of the state to which the child moved of its jurisdiction. It simply held that the court in which the child could be found at birth retained jurisdiction over the adoption of the child. Indeed, the facts indicate that the Arkansas court had exercised jurisdiction over the child, but then stayed the proceedings because it found Missouri to be the more proper forum for resolution of the child's custody and because the adoption had been improperly completed under Missouri law. This is a matter of discretionary deference of the type provided for in UCCJA Section 452.450.1(4). Nothing in In re Baby Girl suggests that the Arkansas court could not have retained jurisdiction for the purposes of determining custody in an abuse and neglect proceeding, if the child's best interests had so required.
By contrast, State v. Farrell, 241 Mo.App. 234, 237 S.W.2d 492, 495 (1951), specifically holds that the fact that a child was improperly brought from another county into the county in which a Petition is filed does not deprive the court in which the Petition is filed of jurisdiction. Id. at 495. In that case, a mother allowed her children to live in squalid conditions in a deserted farmhouse near Louisburg, Missouri. A couple who lived in Ray County gave the mother a ride when they saw her hitchhiking. They took pity on her and gave her coal and groceries and took her home. She offered them custody of one or more of her children, saying she had numerous offers of marriage but only if she did not have her children. The couple initially took custody of an older child whom they later returned because they could not control her. They then took custody of another child, Nancy. Concerned about Nancy's welfare, they contacted authorities in Ray County where they lived. Eventually, a Petition was filed in Ray County to take custody of Nancy because she was neglected within the meaning of the relevant statutes.
The mother claimed that "the Ray County juvenile court was without authority to adjudge Nancy to be a neglected child for the *305 reason that she was illegally imported into the county without appellant's [her mother's] consent." Id. at 495. Of course, this is also the contention made by Respondents. Farrell rejected this argument, stating:
This contention cannot be sustained. The spirit and purpose of the law is to extend the State's protection to all children who are "neglected" within the meaning of the statute. If a child is neither resident of, nor found in, a given county, there is no jurisdiction vested in such county; but the statute, Section 9698, does not limit jurisdiction to the county wherein a child's parents or guardian may reside, but authorizes the agents of the State to act wherever such a child may be.
Id. at 495 (citation omitted). While Farrell dealt with improper transport of a child between counties, its rationale is equally applicable to this case involving two states.
We also note that Farrell is not alone in determining that the manner in which a person is brought into a jurisdiction does not deprive that court of jurisdiction. Generally, a court's jurisdiction over a criminal defendant is not affected by the manner in which he was brought into the state, as long as he is then within the territorial jurisdiction of that state. Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). These cases and their progeny have held that the court may exercise jurisdiction over a person brought within its boundaries, even if the means of bringing the person in the jurisdiction was illegal or improper, such as by kidnapping or by force. See, 25 A.L.R.4th 157. While these cases involved criminal proceedings, the same rule has been applied in cases involving an alleged crime by a juvenile, which are civil proceedings. Since juveniles are treated as adults for extradition purposes, the fact that a juvenile was abducted into the charging state has no affect on the state's jurisdiction to try them. Huffman v. State, 487 S.W.2d 549, 553 (Mo. banc 1972); see also, 73 A.L.R.3d 700 §§ 2-6. These cases apply the same principles relied on in Farrell, supra, in deciding the juvenile's custody.
Similarly, here, we hold that, while the way in which DFS acquired physical custody of R.P. was a factor for the court below to consider in deciding whether to exercise jurisdiction, it did not deprive the court of jurisdiction. The court below specifically found, and we concur, that the best interests of R.P. require the court below to exercise jurisdiction over R.P., and that it would be contrary to Missouri public policy to decline to exercise jurisdiction and to instead give custody of R.P. back to her parents in light of the likelihood of substantial harm which would follow. Consequently, the court below erred in believing that the way R.P. entered the State deprived it of jurisdiction and that it was required to dismiss the Petition.
For these reasons, we make our Preliminary Writ of Prohibition absolute, and instruct the court below not to dismiss the Petition but instead to exercise its jurisdiction to determine R.P.'s custody by proceeding on the Petition below.[4]
All Concur.
NOTES
[1] As discussed infra, Section IV, even though a court has jurisdiction to decide custody issues, it may decline to do so if this is the just and proper course under the circumstances, such as where the child came into the state by means of abduction by the non-custodial parent. See UCCJA, § 452.475 RSMo. Even in such a case, however, the court has the right to determine custody if, as in the current case, the best interests of the child so require. See § IV, infra.
[2] The Parental Kidnapping Prevention Act (PKPA) may limit a court's jurisdiction in a custody dispute involving modification of a decree. The PKPA is a federal act with jurisdictional criteria similar to the UCCJA, and requires the states to give full faith and credit to child custody determinations made by another state, if they are made consistent with the PKPA. 28 U.S.C. § 1738A(1980). The PKPA only applies when a decree exists or proceedings in another state have commenced. Id. As no other state has entered a decree nor commenced proceedings involving R.P., the PKPA is inapplicable to this proceeding.
[3] Section 452.465 provides that:

1. A court of this state shall not exercise its jurisdiction under sections 452.440 to 452.550 if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections 452.440 to 452.550, unless the proceeding is stayed by the court of that other state for any reason.
. . . .
3. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending in order that the issue may be litigated in the more appropriate forum....
As is evident, this section gives the court initially assuming jurisdiction preference over courts receiving later-filed petitions.
[4] Because of our resolution of these issues, we need not address the effect of dismissing the first Petition and filing a second one.